Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/24/2019 09:08 AM CDT

In re Estate of Mark Anthony Helms, deceased.
Christopher Helms, Personal Representative of the Estate
of Mark Anthony Helms, deceased, appellant,
v. Gregory L. Turek et al., appellees.

___ N.W.2d ___

Filed March 1, 2019.    No. S-18-283.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Judgments: Issue Preclusion: Appeal and Error.** The applicability of issue preclusion is a question of law. On a question of law, an appellate court reaches a conclusion independent of the court below.

4. **Judgments: Issue Preclusion.** Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

5. **Decedents' Estates: Venue.** Under Neb. Rev. Stat. § 30-2410(a) (Reissue 2016), venue for probate is proper in the county where the decedent was domiciled or, if the decedent was not domiciled in Nebraska, in any county where property of the decedent was located at the time of his or her death.

Appeal from the County Court for Butler County: C. Jo Petersen, Judge. Affirmed.

Lindsay E. Pedersen and Katherine R. Hall for appellant.

Gregory M. Neuhaus and Joseph D. Neuhaus, of Neuhaus Law Offices, for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

Decades after the tragic death of Mark Anthony Helms in a terrorist bombing, his estate obtained a federal court wrongful death judgment determining that Helms had been domiciled in North Carolina and that damages would be shared according to that state's law. After funds were collected on that judgment, his estate applied to the county court for Butler County, Nebraska, to distribute them instead under a Nebraska wrongful death statute.[1] The county court entered summary judgment, declaring that the proceeds were to be distributed equally to Helms' parents—being his heirs "as existed at the time of his death." We conclude that because of the binding effect of the federal court judgment, the Nebraska wrongful death statute does not apply and the county court properly ordered distribution pursuant to the federal court judgment applying North Carolina law. We affirm the court's entry of summary judgment.

## BACKGROUND

### Wrongful Death and Judgment

On October 23, 1983, the Islamic Republic of Iran bombed a U.S. Marine barracks in Beirut, Lebanon. The bombing killed 241 American servicemen, including Helms. Helms, who died intestate, was survived by his parents and two siblings.

---

[1] Neb. Rev. Stat. § 30-810 (Reissue 2016).

In 1996, an amendment[2] to the Foreign Sovereign Immunities Act of 1976[3] allowed victims of state-sponsored terrorism to bring claims against foreign sovereigns that would otherwise be immune from civil litigation. In 2001, a claim for the wrongful death of Helms and other servicemen was brought in a case filed in the U.S. District Court for the District of Columbia. The federal court's subsequent memorandum opinion does not name Helms' personal representative, but recites that his estate was a party to the wrongful death action in federal court. At no time did a personal representative of Helms file an action for wrongful death in Nebraska.

In 2007, the U.S. District Court for the District of Columbia rendered judgment against the Islamic Republic of Iran.[4] According to the court's opinion, of the 128 deceased servicemen whose personal representatives and estates brought wrongful death claims, 123 were domiciled in North Carolina and none were domiciled in Nebraska.

The federal court's opinion specifically stated: "[E]ach of the deceased servicemen has made out a valid claim for wrongful death under North Carolina law. Accordingly, those valid heirs and beneficiaries under North Carolina's intestate statute are entitled to share in the recovery of the damages awarded as a result of each serviceman's untimely death."[5] The court allocated $1,028,509 of the judgment to the wrongful death claim brought by the personal representative of Helms' estate. Helms' mother died approximately 5 months prior to the entry of this judgment.

In 2010, assets belonging to Iran that had been frozen by the U.S. government were discovered. A federal court allowed access to the assets, a decision which the U.S. Supreme Court

---

[2] See Pub. L. No. 104-132, § 221(a), 110 Stat. 1241.

[3] 28 U.S.C. § 1602 et seq. (2012 & Supp. IV 2016).

[4] *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007).

[5] *Id.* at 40.

later affirmed.[6] In 2016, distribution of the assets commenced. The amount paid to the estate, after payment of attorney fees and expenses, amounted to $222,925.77. The disbursement check was drawn as follows:

**PAY TO THE ORDER OF:**
ESTATE OF MARK A HELMS
CHRISTOPHER T HELMS, PERSONAL REPRESENTATIVE

### Petition for Distribution

On March 30, 2017, the successor personal representative of the estate filed in an existing probate case in the county court for Butler County a petition to authorize distribution of the judgment proceeds under § 30-810. The petition alleged that Helms was domiciled in Butler County at the time of his death and that his next of kin were his parents and siblings.

According to the petition, Helms' mother left any interest in the wrongful death claim to her spouse. Her spouse died in 2012, leaving all of his assets to his children, Gregory L. Turek, Pamela Joekel, and Deborah Michel (collectively the interested parties). The petition requested that the court hold a hearing and determine under § 30-810 the amount of the judgment proceeds that should be distributed to each next of kin who sustained damages.

### Summary Judgment

The interested parties moved for summary judgment, and the county court sustained the motion. The court found "there exists no genuine issue as to any material fact regarding to whom said proceeds are to be distributed, that being the heirs of . . . Helms as existed at the time of his death, which by law are his parents equally." The court ordered that the personal representative of the estate distribute one-half of the wrongful death proceeds to the estate of Helms' mother and one-half to Helms' father.

---

[6] *Bank Markazi v. Peterson*, ___ U.S. ___, 136 S. Ct. 1310, 194 L. Ed. 2d 463 (2016).

The estate filed a timely appeal, which we moved to our docket.[7]

## ASSIGNMENTS OF ERROR

The estate assigns eight errors, which we consolidate and restate to three: The court erred in (1) granting the interested parties' motion for summary judgment relating to the distribution of wrongful death proceeds, (2) failing to comply with the provisions of § 30-810, and (3) finding that the wrongful death proceeds are to be distributed to Helms' heirs as existed at the time of his death.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[8] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[9]

[3] The applicability of issue preclusion is a question of law. On a question of law, an appellate court reaches a conclusion independent of the court below.[10]

## ANALYSIS

The crux of the estate's appeal is its contention that § 30-810 applies to the distribution of the federal court wrongful death judgment. Section 30-810 provides that "[t]he avails [of a

---

[7] Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[8] *In re Estate of Fuchs*, 297 Neb. 667, 900 N.W.2d 896 (2017).

[9] *Id.*

[10] See *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017).

wrongful death verdict or judgment] shall be paid to and distributed among the widow or widower and next of kin in the proportion that the pecuniary loss suffered by each bears to the total pecuniary loss suffered by all such persons." This statute further requires that the court distribute any such proceeds "to the persons entitled thereto after a hearing thereon . . . ."[11] However, we agree with the interested parties that § 30-810 has no application in the situation before us.

The estate's argument based on § 30-810 fails, because we are not presented with a Nebraska wrongful death claim. No wrongful death action was brought and no judgment has been recovered pursuant to that statute for that death. The wrongful death judgment proceeds that the estate seeks to distribute were awarded in an action brought in the U.S. District Court for the District of Columbia under the wrongful death and intestate succession laws of North Carolina.[12]

[4] In distributing the proceeds of the federal court wrongful death action, the estate is barred from now asserting that Nebraska was Helms' domicile at the time of his death. The federal court case determined that North Carolina was Helms' domicile. Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.[13] Here, all of those elements are satisfied. Helms' domicile in North Carolina and his wrongful death pursuant to North Carolina law were decided in the federal court case,[14] and that action resulted in a final judgment on the merits. Counsel for the

---

[11] § 30-810.

[12] See *Peterson v. Islamic Republic of Iran, supra* note 4.

[13] *In re Interest of Noah B. et al., supra* note 10.

[14] See *Peterson v. Islamic Republic of Iran, supra* note 4.

estate conceded at oral arguments that Helms' personal representative was a party in the federal court case, which implicitly concedes that Helms' successor personal representative here is in privity with that party. Finally, there was an opportunity to fully and fairly litigate Helms' domicile in the prior action. Thus, the estate is bound by the federal court's determination that North Carolina was Helms' domicile.

It necessarily follows that the distribution of the wrongful death proceeds is governed by North Carolina law. Under that state's wrongful death statute,[15] any amount recovered is applied to certain expenses and attorney fees and is then distributed "as provided in the [North Carolina] Intestate Succession Act." North Carolina's Intestate Succession Act,[16] in turn, states that "[i]f the intestate [decedent] is not survived by a child, children or any lineal descendant of a deceased child or children, but is survived by both parents, they shall take in equal shares, or if either parent is dead, the surviving parent shall take the entire share[.]"[17] And the persons who, under that Intestate Succession Act, are entitled to recovery in a wrongful death action are to be determined as of the time of the decedent's death.[18] Because Helms was survived by his parents at the time of his death, North Carolina law dictates that they share equally in any wrongful death proceeds.

[5] The estate argues that because a probate case has been pending in Nebraska since 2001, "Helms must have been domiciled in Nebraska at the time of his death."[19] But that premise is flawed. Under Nebraska law, venue for probate is proper in the county where the decedent was domiciled or, if the decedent was not domiciled in Nebraska, in any county

---

[15] N.C. Gen. Stat. § 28A-18-2(a) (2007).

[16] N.C. Gen. Stat. §§ 29-1 through 29-30 (2007).

[17] § 29-15(3).

[18] *Bank v. Hackney*, 266 N.C. 17, 145 S.E.2d 352 (1965).

[19] Reply brief for appellant at 3.

where property of the decedent was located at the time of his or her death.[20] Thus, commencement of a probate case in Nebraska did not, in and of itself, preclude Helms from having been domiciled in North Carolina.

The estate instead may be implicitly arguing that the Nebraska probate case was commenced on the basis that Helms was domiciled in Nebraska. Assuming without deciding that the earlier pleadings in the probate case are properly before us and that these pleadings asserted that Helms was domiciled in Nebraska, any such allegation was immaterial here. Regarding distribution of proceeds of the federal court wrongful death judgment, the estate is collaterally estopped from asserting that Helms' domicile is anywhere other than North Carolina. Likewise, the federal court judgment precludes the estate from distributing the proceeds other than in accordance with that judgment.

The county court properly entered summary judgment, because there is no genuine issue of material fact in this case. We agree with the court that the proper distribution of the proceeds is one-half to Helms' father and one-half to the estate of Helms' mother.

## CONCLUSION

Because there is no genuine issue of material fact as to whom the wrongful death judgment proceeds should be distributed, we affirm the county court's entry of summary judgment.

AFFIRMED.

---

[20] Neb. Rev. Stat. § 30-2410(a) (Reissue 2016).