TECUMSEH NATIONAL BANK V. GEORGE W. HARMON.

FILED APRIL 21, 1896. No. 6499.

1. Action on Bank Deposit: TRIAL: PLEADING: AMENDMENT BY AGREEMENT: PRACTICE. H. sued the T. Bank on a deposit. The bank answered by a general denial. During the trial, it undertook to prove payment. Objection being made to the relevancy of the proof, an agreement was made in open court whereby the bank was allowed twenty days to amend its answer "in any manner," with the same effect as if presently filed, and the trial proceeded. The instructions given excluded from the jury the consideration of the issue of payment which was finally tendered by the amended answer, filed after trial, but within the stipulated time. *Held*, That the plaintiff was bound by the terms of his stipulation, and that the judgment must be reversed for failure to submit the issues finally framed, to the jury.

2. Practice: TRIAL. The practice of proceeding with a trial subject to a future amendment of the pleadings, criticised.

ERROR from the district court of Johnson county. Tried below before BABCOCK, J.

*John H. Ames* and *S. P. Davidson*, for plaintiff in error.

*T. Appelget* and *J. H. Broady, contra.*

IRVINE, C.

This case has been elaborately argued, orally and on briefs, with relation to questions of substantive law supposed to be involved therein. We think, however, that its decision must depend chiefly upon matters of practice, presented by a state of the record so anomalous that they must be determined principally upon general considerations, without the aid of authority. Harmon brought the suit against the Tecumseh National Bank, alleging that on the 6th day of March, 1891, he deposited with the bank $5,000, at the instance and request of the bank, and that the deposit was to draw interest at six per cent per annum; that $1,000 and all interest to March 9, 1892, had been paid, but the remaining $4,000, with interest from said March 9, remained due. To this petition there was originally filed an answer admitting the corporate capacity of the defendant, and denying all other allegations. On the issues so framed the case proceeded to trial, but immediately after the defendant began to introduce its evidence it was confronted by an objection on the ground of irrelevancy. What then occurred is thus recited in the record: "The defendant here asks leave of court to amend his answer, to which the plaintiff objects. On the intimation of the court that he would permit the defendant to withdraw a juror and consequently continue the case, rather than submit to that, the plaintiff consents that the defendant can go on and draw their answer in any manner and file it, and they will rely on the instructions of the court. It is agreed by the parties that the amended answer so filed will have the same effect as though filed now. Said answer to be filed within twenty days." Thereupon the case proceeded and the evidence took a wide range. There was a verdict for the plaintiff for $4,000, with interest. Judgment was entered on this, and the defendant prosecutes error.

On the one side it is contended that the verdict is not sustained by the evidence; on the other, that, without

regard to any error which may have occurred in the course of the trial, the verdict was the only one which could be properly rendered under the evidence, and that the judgment should for that reason be affirmed. As we think the cause must be remanded for a new trial, we forbear any comment upon the evidence beyond what is necessary to solve the questions now presented to us, and simply say that in our opinion it was of such a character as to require the submission of the contested issues to a jury. There had been for a long time in Tecumseh a firm of bankers known as Russell & Holmes. Latterly it seems that this concern, whether by incorporation or otherwise does not appear, was styled "The Bank of Russell & Holmes." Before the transaction here in controversy, the Tecumseh National Bank was organized and seems to have become a successor to Russell & Holmes, although the evidence tends to show that the former firm remained in existence for the purpose of closing out some incidental business. Mr. Holmes, of the old firm, was president of the national bank. March 6, 1891, there was a conversation between Harmon and Mr. Holmes in the banking house, looking to the withdrawal by Mr. Harmon of money he had on deposit in the Carson National Bank of Auburn, and the loan or deposit of this money on interest either with Russell & Holmes or the Tecumseh National Bank. Whether the party contracting to receive the deposit or loan was Russell & Holmes or the Tecumseh National Bank is the vital question of the case, coupled with another, which we do not pass upon, which is whether, under the circumstances, the bank may be held liable by estoppel on account of the acts of its president, although it did not in fact receive the benefit of the money. It was agreed between Holmes and Harmon that Harmon should withdraw $5,000 from the Carson bank and place it with Holmes. He drew his check upon the Carson bank for $5,000 to the order of the Tecumseh National Bank, and received what is called a deposit slip, headed "Tecumseh National Bank," signed by Holmes as

president, and indicating the deposit of the check for $5,000. This check was by the Tecumseh bank indorsed for collection, and it was collected. March 9, three days after this transaction, there was issued by Holmes, and accepted by Harmon, a pass-book, being one of the books which had formerly been used by the bank of Russell & Holmes. This was marked on the cover, "Bank of Russell & Holmes, Tecumseh, Nebraska, in account with George Harmon." Inside was the following:

"The Bank of Russell & Holmes, Dr.

1891.

Mch. 9. Deposit........................... $5,000

"This deposit to draw interest at six per cent per an. if left six months. Interest paid to Mch. 9—91."

On another page were certain entries indicating the payment of certain sums as interest and principal. There was evidence *aliunde* tending to show that the transaction was a loan to Russell & Holmes at six per cent; that the deposit of March 6 was only preliminary to that transaction; and that on March 9 the transaction was consummated, as evidenced by the pass-book, the money in fact passing to Russell & Holmes. On the other hand, there was evidence tending to show that Harmon understood that the whole transaction was with the Tecumseh National Bank; that he was unable to read, and therefore was perhaps not bound by the form of the pass-book, which might at least have put another man on inquiry.

The court gave a number of instructions at the request of the plaintiff, several of which were to the effect that the jury should find for the plaintiff if, on March 6, or about that time, he left with the defendant the money sued for. By one of the instructions the jury was told that the plaintiff's check and the deposit slip of March 6 constituted a complete written contract, the terms of which could not be contradicted by oral evidence, and that the jury should disregard all oral evidence tending to so contradict these papers. By still another the jury was instructed that the pass-book of March 9 could not

be received for the purpose of changing the terms of the contract, as evidenced by the check and deposit slip of March 6. Here the question of practice is presented for consideration. As the issues stood at this time, the petition was on a deposit. The answer was a general denial, and under this answer the defendant could not prove discharge by payment or otherwise; but under the answer as finally filed, while it was perhaps not very artificially drawn, the issue of payment was presented; and the question was not merely whether a deposit had been made on March 6, but it was whether the bank had discharged the liability thereby incurred by collecting the check and paying its proceeds to Russell & Holmes, in pursuance of plaintiff's direction. It is at once apparent that the instructions given confined the jury to the sole question as to whether the deposit had been made, and directed them that the transaction of March 9 could not be received to avoid the effect of any evidence as to the transaction of March 6. They did not submit the issues presented by the amended answer. The real question is, therefore, whether the defendant can now avail itself of its amended answer. In *Grimison v. Russell*, 11 Neb., 469, the original pleadings were lost after trial and before judgment; copies were not substituted and the judgment was reversed, because the court had no authority to enter judgment without pleadings whereon to found it. The reason of that case is applicable to this, although perhaps the defendant, being the party originally at fault, could not avail itself of the error if the plaintiff had been free from fault. But the stipulation of record shows that the plaintiff consented that the defendant might have twenty days to file its answer "in any manner," with the same effect as if then filed. The proceeding was highly irregular, and the court should have insisted that the issues be framed before the trial proceeded. By consenting to this course, however, the plaintiff bound himself to submit to any answer which might be filed within the time stipulated and allowed by the court. This an-

swer presented issues which had not been submitted to the jury. We think the plaintiff must be held to his stipulation and the case must be considered as if the answer finally filed had been already filed when the instructions were given. It is always well to have issues framed before judgment. This case illustrates the danger of trying a case and proceeding to judgment, and pleading it thereafter.

It is argued that there was a special finding, which in effect determines the merits of the case, independent of the general verdict. The following is the question propounded to the jury, and its answer: "Was the money in controversy included in the fund of the Tecumseh National Bank, after the amount thereof was entered upon plaintiff's pass-book with Russell & Holmes; if so, at what time?" The answer was as follows: "Yes; March 9, 1891." We have been unable, after a careful examination of the evidence, to find any evidence sustaining this finding.

REVERSED AND REMANDED.