Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/04/2022 09:05 AM CDT

Lauren Ramaekers et al., appellants, v.
Creighton University, a Nebraska
nonprofit corporation, appellee.

___ N.W.2d ___

Filed August 12, 2022.    No. S-21-848.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.
2. **Judgments.** The meaning of the judgment is a question of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
5. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.
6. **Injunction: Final Orders.** While it is well established that orders relating to temporary injunctions and restraining orders are not final orders, it is equally well established that orders entering or denying permanent injunctions, which leave no issues remaining to be determined by the trial court, are final orders within the meaning of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020).
7. **Judgments.** A judgment's meaning is determined, as a matter of law, by the contents of the judgment in question.
8. ____. Unless the language used in a judgment is ambiguous, the effect of the judgment must be declared in the light of the literal meaning of the language used.
9. **Judgments: Words and Phrases.** Ambiguity in a judgment exists when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

10. **Judgments.** If the language of a judgment is ambiguous, there is room for construction.
11. ____. In ascertaining the meaning of an ambiguous judgment, resort may be had to the entire record.
12. **Judgments: Intent.** Doubtful or ambiguous judgments are to have a reasonable intendment to do justice and avoid wrong.
13. **Injunction.** Generally, the purpose of a temporary injunction is to protect the subject matter of litigation and preserve the status quo of the parties until a determination of the case on the merits.
14. **Injunction: Judgments: Moot Question.** Where there is a final judgment against the party enjoined, the temporary injunction merges into the judgment and any questions concerning the propriety of the issuance of the temporary injunction become moot.
15. **Pleadings.** The issues in a case are framed by the pleadings.
16. ____. In an answer, the defending party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies.
17. **Injunction.** There are significant procedural differences between temporary and permanent injunctions.
18. **Injunction: Judgments.** Generally, a district court should not order a judgment on the merits at the temporary injunction stage of proceedings.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Appeal dismissed.

Robert M. Sullivan, of Sullivan Law, P.C., L.L.O., for appellants.

William F. Hargens, Abigail M. Moland, and Britni A. Summers, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## I. INTRODUCTION

Ten students at Creighton University (Creighton) appeal from a district court's order denying injunctive relief. The threshold jurisdictional question is whether the order denied only a temporary injunction, and thus was neither final nor appealable,

or whether it denied a permanent injunction. Because we find ambiguity within the order's four corners, we examine the record, which shows that only temporary relief was sought and denied. We therefore lack jurisdiction and dismiss the appeal.

## II. BACKGROUND

Because we decide this appeal on jurisdiction, we provide only a brief background section. Other facts will be set forth in our analysis section below.

### 1. VACCINE MANDATE

In July 2021, Creighton mandated that its students must be vaccinated against COVID-19 to register for classes. Creighton offered students an exemption from the mandate "due to the Emergency Use Authorization (EUA) status of the [COVID-19] vaccines." But to obtain this waiver, students had to agree in writing to be vaccinated after "the [COVID-19] vaccines [were] granted full approval by the [U.S.] Food and Drug Administration." On August 23, the Food and Drug Administration fully approved certain COVID-19 vaccines.

Accordingly, Creighton mandated that students who had obtained the waiver must receive their first dose of a fully approved COVID-19 vaccine by September 7, 2021, at 4:30 p.m. Students who failed to do so would be "administratively withdrawn from [Creighton] and unable to attend classes or be on campus" after September 10.

### 2. COMPLAINT FOR INJUNCTIVE RELIEF

Only 97 minutes before the 4:30 p.m. deadline, four students filed a complaint, styled as a "Petition for Injunction & Praecipe." They sought to enjoin Creighton from administratively withdrawing students who did not comply with its COVID-19 vaccine policy.

The next day, Creighton's attorneys filed a "Notice of Appearance," but Creighton did not, at that time, file either a motion to dismiss or an answer. On that same day, the four students amended their complaint and filed a "Motion for

Expedited Ex Parte Hearing." The amended complaint did not change the factual allegations but inserted an additional request in their prayer for relief. The motion sought "an order restoring [them] as students of [Creighton], pending further Order of the Court." The motion did not explicitly request a temporary restraining order or temporary injunction.

The court "granted" the motion and set an expedited hearing date. But before the hearing, a second amended complaint added and deleted plaintiffs without otherwise altering the body of the complaint.

### 3. September 14, 2021, Hearing

The court heard the motion on September 14, 2021. Counsel for all parties attended and participated. To the extent the proceedings are relevant to the jurisdictional issue, we summarize them at the appropriate point in the analysis section below. At the hearing's end, the court took the motion under advisement.

Before the court issued any ruling, third and fourth amended complaints were filed adding additional plaintiffs and Creighton filed a motion to strike two of the amended complaints. Because the amended complaints never changed the factual allegations stated in their original complaint, we do not distinguish between the complaints throughout the remainder of this opinion. Ultimately, through these amended complaints, 10 students, Lauren Ramaekers, Patrice Quadrel, Sarah Sinsel, Sydney Case, Anne Clare Culpepper, Emma Carlson, Elliot Prusa, Avery Gillett, Nikokije Kozic, and Alecsandar Kozic (collectively Students), pursued the action.

### 4. September 17, 2021, Hearing

The court held a hearing on Creighton's motion to strike on September 17, 2021. Counsel for all parties attended and participated. For reasons not pertinent here, the court overruled Creighton's motion.

But at this hearing, the court also announced its decision on Students' motion. To the extent the court's announcement and

its colloquy with counsel relate to the jurisdictional question, we summarize them in the analysis section below.

### 5. September 22, 2021, Order

On September 22, 2021, the court issued a written order (the order). After recounting the September 14 appearances of counsel, affidavits received, and procedural history, as well as summarizing the September 17 appearances and procedural history, the order stated in relevant part:

1. [Ruling on Creighton's motion to strike.]

2. The court then took up the matter of [Students'] requests for injunctive relief in [their complaint].

3. Based on arguments of counsel for [Students], the Court concludes that [Students'] request for injunctive relief is based on a breach of contract theory. However, to the extent that there was a contract between [Students] and [Creighton], and without finding that such a contract existed, the Court finds that [Students'] agreement to receive a COVID-19 vaccine once the [Food and Drug Administration] fully approved a COVID-19 vaccine became part of that contract.

4. The Court further finds that [Students] have failed to show irreparable harm.

5. The Court further finds that [Students] have failed to show a likelihood of success on the merits.

6. For the reasons set forth above, and for the reasons stated by the Court on the record during the September 17 . . . hearing, including the Court's reliance upon the legal analysis in [a Seventh Circuit opinion], the Court hereby denies [Students'] requests for injunctive relief as set forth in [Students' complaint] and, to the extent [the complaint] and/or their Motion for an Expedited Ex Parte Hearing could be construed as [m]otions for a [t]emporary [r]estraining [o]rder or [t]emporary [i]njunction pursuant to Neb. Rev. Stat. §§ 25-1063 and/or 25-1064 [(Reissue 2016)], those motions are hereby denied.

Students filed a timely appeal. We moved the appeal to our docket.[1]

## III. ASSIGNMENTS OF ERROR

Students set forth eight assignments of error, all of which, in various ways, attack the district court's refusal to grant injunctive relief.

Creighton's brief, prior to discussing the merits of the court's order, asserts that we lack jurisdiction of the appeal. It contends that the order denied only Students' request for temporary injunctive relief and that, therefore, the order was neither final nor appealable.

## IV. STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[2]

[2] The meaning of the judgment is a question of law.[3]

[3] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[4]

## V. ANALYSIS

### 1. Jurisdictional Question

[4,5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[5] For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[6]

[6] While it is well established that orders relating to temporary injunctions and restraining orders are not final orders,

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

[2] *In re Estate of Beltran*, 310 Neb. 174, 964 N.W.2d 714 (2021).

[3] *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014).

[4] *In re Estate of Beltran, supra* note 2.

[5] *Cinatl v. Prososki*, 307 Neb. 477, 949 N.W.2d 505 (2020).

[6] *Id.*

it is equally well established that orders entering or denying permanent injunctions, which leave no issues remaining to be determined by the trial court, are final orders within the meaning of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020).[7] For over 150 years, we have repeatedly held that the issuance,[8] denial,[9] or dissolution[10] of a temporary injunction is not a final order.

Therefore, for this court to have jurisdiction for the instant appeal, the order must not only have denied temporary injunctive relief, but also have denied a permanent injunction. Students argue that the court did so, citing the language in the order that stated, "[T]he Court hereby denies [Students'] requests for injunctive relief as set forth in [their complaint]." Creighton, on the other hand, argues that the order addressed only Students' request for temporary injunctive relief, focusing on language of the order that recited findings pertinent only to temporary injunctive relief. We first turn to the principles of law applicable to determining the meaning of a judgment or an order.

## 2. PRINCIPLES OF LAW

[7-9] A judgment's meaning is determined, as a matter of law, by the contents of the judgment in question.[11] Unless the

---

[7] *Waite v. City of Omaha*, 263 Neb. 589, 641 N.W.2d 351 (2002).

[8] See, *Shasta Linen Supply v. Applied Underwriters*, 290 Neb. 640, 861 N.W.2d 425 (2015); *Pennfield Oil Co. v. Winstrom*, 267 Neb. 288, 673 N.W.2d 558 (2004); *State ex rel. Beck v. Associates Discount Corp.*, 162 Neb. 683, 77 N.W.2d 215 (1956); *Guaranty Fund Commission v. Teichmeier*, 119 Neb. 387, 229 N.W. 121 (1930); *Barkley v. Pool*, 102 Neb. 799, 169 N.W. 730 (1918); *Young v. City of Albion*, 77 Neb. 678, 110 N.W. 706 (1906); *Bartram v. Sherman*, 46 Neb. 713, 65 N.W. 789 (1896); *School Dist. No. 15 v. Brown*, 10 Neb. 440, 6 N.W. 770 (1880).

[9] See, *Waite v. City of Omaha, supra* note 7; *Manning v. Connell*, 47 Neb. 83, 66 N.W. 17 (1896).

[10] See, *Waite v. City of Omaha, supra* note 7; *Abramson v. Bemis*, 201 Neb. 97, 266 N.W.2d 226 (1978); *Meng v. Coffee*, 52 Neb. 44, 71 N.W. 975 (1897); *Smith v. Sahler*, 1 Neb. 310 (1871). See, also, *Clark v. Fitch*, 32 Neb. 511, 49 N.W. 374 (1891) (declining to dissolve not final).

[11] See *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990).

language used in a judgment is ambiguous, the effect of the judgment must be declared in the light of the literal meaning of the language used.[12] Ambiguity in a judgment exists when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[13]

[10-12] If the language of a judgment is ambiguous, there is room for construction.[14] In ascertaining the meaning of an ambiguous judgment, resort may be had to the entire record.[15] Doubtful or ambiguous judgments are to have a reasonable intendment to do justice and avoid wrong.[16]

Although we may not have said so previously, we see no reason why these principles should not apply to orders—at least where the order may be final. With the principles in mind, we turn to the four corners of the order.

### 3. Four Corners

Near the end of the background section, we extensively quoted the relevant parts of the order. We need not repeat them here.

We find the order to be ambiguous. It used language that—considered in the context of the entire order—can reasonably be read to have more than one conflicting meaning.

In the order, the court "denie[d] [Students'] requests for injunctive relief as set forth in [their complaint]." The complaint sought to permanently enjoin Creighton from enforcing its COVID-19 vaccine policy. Accordingly, that part of the order could reasonably be read to deny Students' request for a permanent injunction.

---

[12] See *Bokelman v. Bokelman*, 202 Neb. 17, 272 N.W.2d 916 (1979).

[13] *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018).

[14] *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995), *disapproved on other grounds, Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

[15] *Id.*

[16] *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

However, a conflicting interpretation arises when that language is considered alongside the rest of the order. The court denied injunctive relief after applying an analytical framework commonly used by courts only to deny requests for temporary injunctive relief.[17] Another part of the order, referring to "[Students' complaint] and/or their Motion for an Expedited Ex Parte Hearing," said that they "could be construed as [m]otions for a [t]emporary [r]estraining [o]rder or [t]emporary [i]njunction."

[13,14] If, as Students contend, the order was intended to deny their request for a permanent injunction, there would have been no reason for the court to include a temporary injunction analysis. Generally, the purpose of a temporary injunction is to protect the subject matter of litigation and preserve the status quo of the parties until a determination of the case on the merits.[18] Where there is a final judgment against the party enjoined, the temporary injunction merges into the judgment and any questions concerning the propriety of the issuance of the temporary injunction become moot.[19] To paraphrase our discussion of a similar situation, a court need not rule on who won a battle, if it has already decided who won the war.[20]

Because the order is ambiguous, we turn to the record to ascertain its meaning.

### 4. Meaning in Light of Entire Record

#### (a) Additional Facts

We now look to the record, focusing on the acts and words of the parties and the court at the two hearings and in their

---

[17] See, e.g., *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

[18] *Pennfield Oil Co. v. Winstrom*, 272 Neb. 219, 720 N.W.2d 886 (2006).

[19] See *State ex rel. Douglas v. Ledwith*, 204 Neb. 6, 281 N.W.2d 729 (1979).

[20] See *Melanie M. v. Winterer*, 290 Neb. 764, 862 N.W.2d 76 (2015) (discussing termination of temporary restraining order by overruling of motion for temporary injunction and sustaining of motion for summary judgment).

filings. As we articulate below, we find that the order denied only Students' request for a temporary injunction.

### (i) Students' Motion Sought Temporary Relief

To begin, Students' motion sought "an order restoring [them] as students of [Creighton], *pending further Order of the Court.*" (Emphasis supplied.) This clearly reflects a request for a temporary order, to be followed at a later time by something more—presumably, by a judgment or final order.

### (ii) Pleadings Failed to Frame Issues

[15,16] When Students filed their motion, Creighton had not filed an answer nor had the time expired for the filing of an answer. The issues in a case are framed by the pleadings.[21] In an answer, the defending party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies.[22] Long ago, we said that it is always well to have issues framed before judgment.[23] Treating the hearing on Students' motion as a trial on the merits would circumvent the issue-framing function of pleadings. Moreover, it would deprive Creighton of any opportunity to assert defenses.

### (iii) Arguments at September 14, 2021, Hearing

The court began the September 14, 2021, hearing by noting that Students had not filed a motion for a temporary restraining order or a motion for temporary injunction. Then, the court stated, "[Students] are requesting an order . . . restoring [them] as students of [Creighton]" and "the Court is going to construe that . . . request by [Students] as . . . requesting temporary relief from this Court, pursuant to [§] 25-1063, which will equitably permit the Court to consider this in [Students'] motion as seeking some temporary relief . . . ."

---

[21] *In re Petition of Anonymous 5*, 286 Neb. 640, 838 N.W.2d 226 (2013).

[22] See Neb. Ct. R. Pldg. § 6-1108(b).

[23] *Tecumseh Nat. Bank v. Harmon*, 48 Neb. 222, 66 N.W. 1128 (1896).

Neither party contradicted the court's interpretation of Students' motion. The court then instructed the parties "to proceed accordingly."

First, the parties submitted affidavits to the court, which the court—imposing its own limitation—received "for purposes of this hearing." Neither party objected to the court's limitation.

Students and Creighton then argued whether the court should grant Students' request for a temporary injunction. Students began by contending that "the allegations set forth in the [complaint] met the standards necessary for a temporary injunction. . . . [I]t would be appropriate for the Court to enter an order of temporary injunction, . . . so we can have more evidence on this and really open this up and see what's in there."

Creighton responded by first noting its difficulties in sufficiently defending against Students' allegations, because "this case . . . has been a moving target. The facts, the allegations, the even purported evidence offered by [Students] has been evolving . . . ."

Creighton also highlighted perceived deficiencies in Students' complaint. Creighton noted, "We've got several people named in the caption of the case. None of them are identified in . . . the body of the [complaint]. . . . [T]wo of the plaintiffs have already received the [COVID-19] vaccine. . . . They've not been unenrolled, . . . they don't have a place in this lawsuit."

Creighton concluded by contending that the evidence in the record did not support Students' request for a temporary injunction. For instance, Creighton argued that there was not "any medical evidence to support" Students' allegation that "some [of them] have serious medical conditions which make the vaccine 'not recommended'" in the affidavits received by the court.

In rebuttal, Students conceded that "this case has been a moving target since we filed it." However, they argued that "the nature of a temporary injunction is such that . . . the pleadings may not look all that finely tuned originally, but as soon as

we can get something in place that can allow us all to breathe, then we can go back in and clean things up quite a bit."

The court concluded the hearing by taking the matter under advisement. The court expressed its desire to issue a ruling quickly "based on the circumstances involving [Students]." However, the court never indicated it planned to issue a final ruling on the merits of Students' complaint.

### (iv) Discussion at September 17, 2021, Hearing

Three days later, the court orally announced its ruling on Students' request for a temporary injunction. The court stated:

> [I]t is the Court's intention to deny [Students' complaint] for [i]njunction and/or [t]emporary [r]estraining order under [§§] 25-1063 and 25-1064, et seq. [Students] have asserted a kind of a breach of contract theory against Creighton. . . . [T]he Court does not believe that [Students] could show any irreparable injury that [Students] would be able to show a likelihood of succeeding on the merits of a breach of contract against Creighton.

In response, Students' attorney asked the court, "I assume, Your Honor, that this is a final order and that the case has been dismissed?" The court answered that it was not a final order and that the case was not dismissed, because the court read Students' complaint as "still seeking some breach of contract related damages, monetary damages. It had claims for unjust enrichment . . . . [T]he Court's ruling is only . . . in regards to the request for the temporary injunction."

Students' attorney rebutted the court's belief that Students were seeking monetary damages. Their attorney claimed that the allegations of monetary damages "were simply for purposes of alleging to the Court the need for a temporary injunction."

Creighton's attorney noted that it was immaterial whether Students were seeking monetary damages, because "a denial of a request for a temporary injunctive relief does not constitute a dismissal on the merits, so I don't think the case stands dismissed. I don't think it's a final appealable order at this point."

The court concluded the hearing without providing a definitive answer on whether it still believed issues remained before it or whether its denial of Students' request for a temporary injunction was a final order. The court stated, "I do not need to weigh in on [that,] because that's above my pay grade. So I will let you all deal with the implications of it . . . ."

## (b) Resolution

It is apparent from the record that the order meant only to deny Students' request for a temporary injunction. The record reflected an understanding—by the court and the parties— that only the temporary injunction was before the court. The record does not include any stipulation to enter a final judgment based on the evidence adduced in support of a temporary injunction.[24] Nor did either party file a motion to dismiss or motion for summary judgment in order to reach the merits of Students' complaint.[25]

Further, it is evident from the instructions given to the parties at the September 14, 2021, hearing that the court intended only to rule on whether Students were to receive a temporary injunction. At the hearing, the court informed the parties that it construed Students' motion as requesting temporary injunctive relief and instructed the parties "to proceed accordingly."

[17] If the court intended to make an ultimate determination on the merits of Students' complaint, we believe that it would have instructed the parties differently. As the U.S. Supreme Court has explained, there are significant procedural differences between temporary and permanent injunctions.[26] As the court stated:

---

[24] See, generally, *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

[25] See, generally, Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2020); Neb. Ct. R. Pldg. § 6-1112(b).

[26] See *University of Texas v. Camenisch*, 451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981).

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing . . . .[27]

Further, the Court warned that it is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits.[28]

[18] While we are not bound by the high court's discussion or by the federal rules of civil procedure, we agree that a similar principle should apply to Nebraska trial courts having equity jurisdiction. Generally, a district court should not order a judgment on the merits at the temporary injunction stage of proceedings.[29] Doing so could raise due process concerns, because, as a federal court has observed in the context of a federal rule,[30] when a trial court disposes of a case on the merits after a preliminary injunction hearing without expressly ordering consolidation, it is likely that one or more of the parties will not present their entire case at an unconsolidated preliminary injunction hearing.[31]

Here, reading the order as disposing of Students' complaint on the merits would raise due process concerns. Neither Students nor Creighton presented its entire case to the court at

---

[27] *Id.*, 451 U.S. at 395.

[28] *Id.* But see Fed. R. Civ. P. 65(a)(2) (allowing federal court to consolidate preliminary injunction hearing with trial on merits, but only if sufficient notice is given to parties).

[29] See *University of Texas v. Camenisch, supra* note 26.

[30] See Fed. R. Civ. P. 65(a)(2).

[31] See *Francisco Sánchez v. Esso Standard Oil Co.*, 572 F.3d 1 (1st Cir. 2009).

the September 14, 2021, hearing. As detailed earlier, the arguments were directed toward whether the court should grant Students' temporary injunctive relief—not the final disposition of the claims and any defenses.

Judgments are to have a reasonable intendment to do justice and avoid wrong.[32] Accordingly, to avoid infringing on the parties' due process rights, we find that the order denied only Students' request for temporary injunctive relief.

At oral argument, relying upon our 2018 decision in *Tilson v. Tilson*,[33] Students argued that even if the order was properly characterized as a denial of a temporary injunction, it was nonetheless a final order under § 25-1902. We are not persuaded. There, we found that an order denying a request for temporary relief was not a final order.[34] So, in that case, we dismissed the appeal for lack of jurisdiction.[35] Students' reliance on that decision is misplaced.

## VI. CONCLUSION

Students appeal from an order that denied only their request for temporary injunctive relief. For over 150 years, we have held that such orders are neither final nor appealable. Because the court's denial of a temporary injunction was not a final order, we lack jurisdiction of the appeal and must dismiss it.

APPEAL DISMISSED.

---

[32] See *Bayne v. Bayne, supra* note 16.

[33] *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018).

[34] See *id.*

[35] See *id.*