Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/24/2023 09:06 AM CST

IN RE MICHAEL HESSLER LIVING TRUST.
HEIDI SHADDICK ET AL., APPELLANTS, V. ROBERT
HESSLER, SUCCESSOR TRUSTEE OF THE
MICHAEL HESSLER LIVING TRUST,
AND LORI J. MILLER, APPELLEES.

___ N.W.2d ___

Filed February 24, 2023.    No. S-22-247.

1. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
2. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, and this is so even where neither party has raised the issue.
3. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.
4. **Final Orders: Appeal and Error.** The four types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, (3) an order affecting a substantial right made on summary application in an action after judgment is rendered, and (4) an order denying a motion for summary judgment when such motion is based on the assertion of sovereign immunity or the immunity of a government official.
5. **Actions: Statutes.** A special proceeding entails civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes.
6. **Decedents' Estates.** A proceeding under the Nebraska Probate Code is a special proceeding.
7. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

8. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

9. **Final Orders.** Substantial rights under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022) include those legal rights that a party is entitled to enforce or defend.

10. **Final Orders: Appeal and Error.** Having a substantial effect on a substantial right depends most fundamentally on whether the right could otherwise effectively be vindicated through an appeal from the final judgment.

11. **Summary Judgment: Final Orders.** Partial summary judgments are usually considered interlocutory; they must ordinarily dispose of the whole merits of the case to be considered final.

12. **Summary Judgment: Final Orders: Appeal and Error.** If an order granting partial summary judgment affects a substantial right and is made during a special proceeding, it is final for the purpose of appeal.

13. **Decedents' Estates: Final Orders.** A consideration regarding the finality of orders in probate cases is whether the order ended a discrete—that is, separate and distinct—phase of the proceedings.

Appeal from the District Court for Scotts Bluff County: Kris D. Mickey, Judge. Appeal dismissed.

Cathy S. Trent-Vilim and John M. Walker, of Lamson, Dugan & Murray, L.L.P., for appellants.

Thomas T. Holyoke and Andrew W. Snyder, of Holyoke, Snyder, Longoria, Reichert & Rice, P.C., L.L.O., and Jeffery T. Peetz and Brian S. Koerwitz, of Peetz, Koerwitz & Lafleur, P.C., L.L.O., for appellees.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Pankonin, District Judge.

Funke, J.

## INTRODUCTION

After Michael A. Hessler (the Decedent) died, his trust devised his house to his girlfriend, Lori J. Miller, and

bequeathed the trust's residuary to his three children in equal shares. The house comprised the majority of the trust's value. Robert Hessler, the successor trustee (the Trustee), deeded the house to Miller, allocating all inheritance tax resulting from the transfer to the trust's residuary. Hessler's children brought an action in the county court for Lancaster County, Nebraska, against the Trustee and Miller. Among other relief, Hessler's children sought a determination that one or more trust amendments resulted from Miller's undue influence or, alternatively, that all inheritance tax obligations created by the real estate transfer must be apportioned to and collected from Miller.

The county court for Lancaster County transferred venue to the county court for Scotts Bluff County, Nebraska. The county court for Scotts Bluff County then granted Miller partial summary judgment, ordering that all inheritance taxes, as well as legal and administrative expenses, be paid out of the Trust's residuary. Hessler's children subsequently voluntarily dismissed their undue influence claim. Over 4 months after the county court's order granting Miller partial summary judgment, Hessler's children appealed. For the reasons we explain below, we dismiss the appeal.

## BACKGROUND

The Decedent was the father of Heidi Shaddick, Amber Rocha, and Brock Hessler (collectively the children). In 2006, the Decedent executed "The Michael Hessler Living Trust" (hereinafter the Trust). The Trust directed that the remaining trust assets be divided into equal shares, one for each living child and any deceased child of the decedent. The Decedent subsequently amended the Trust four times. Per the third amendment, the Decedent provided that before any distribution to the children, his real estate in Lancaster County (the residence) was to be distributed to Miller as long as she was living in the home at the time of his death. In its final form, the Trust expresses an intention to gift Miller the residence

"outright" and to designate the children, equally, as the Trust's residual beneficiaries.

The Decedent died on November 23, 2020. On February 15, 2021, the Trustee registered the Trust in Scotts Bluff County. The Trust property has been valued at $964,610.47, of which $592,000 constitutes the value of the residence. There is no dispute that the Decedent and Miller never married and that, as a result, Miller's distribution will be taxed at a higher rate than the distributions to the children.

On February 18, 2021, the Trustee conveyed the residence to Miller by a deed of distribution. Based on his reading of the Trust language, the Trustee transferred the residence to Miller free and clear of any inheritance tax obligation and allocated all inheritance tax arising out of the real estate transfer to the Trust's residuary. Section 7 of the Trust provides, in pertinent part:

> **a. PAYMENT OF TAXES.** The Successor Trustee shall pay from this trust all inheritance and estate taxes due by reason of the Settlor's death irrespective of whether such taxes are in respect of the trust property.

> **b. PAYMENT OF EXPENSES AND DEBTS.** The Successor Trustee shall pay the funeral and related expenses of the Settlor together with the expenses of last illness not covered by [M]edicare or insurance. Additionally, the Successor Trustee may pay such of the debts and obligations of the Settlor as the Successor Trustee determines appropriate under the circumstances. In further addition, the Successor Trustee may pay the expenses of administering Settlor's estate, it being the express intention of the Settlor that the Successor Trustee take such actions as are appropriate to bring about an efficient and orderly administration of Settlor's estate.

On May 25, 2021, the children brought an action against the Trustee and Miller in the county court for Lancaster County. The children sought: (1) voidance of the Trustee's

conveyance of the residence to Miller or, alternatively, a constructive trust permitting the residence to be liquidated; (2) a declaratory judgment declaring the parties' rights and duties with respect to the inheritance tax consequences of Miller's rights to the residence; (3) removal of the Trustee; (4) an accounting of the Trust; (5) a finding that the Decedent was unduly influenced by Miller to amend the Trust; and (6) monetary damages against Miller for property obtained as a result of undue influence. The Trustee moved the county court for an order transferring venue to Scotts Bluff County where the Trust was registered. On August 27, the county court issued an order granting the Trustee's motion to transfer venue.

The children and Miller moved for partial summary judgment on October 6 and 20, 2021, respectively, as to how the inheritance tax should be allocated. In their motion, the children asserted that the Trust was silent on the apportionment of applicable inheritance taxes and that, pursuant to Neb. Rev. Stat. § 77-2108 (Reissue 2018), the inheritance taxes related to the Trust were required by law to be "equitably apportioned and prorated among the persons interested in the estate or transfer." Miller's motion asserted that the Trust directed the Trustee to pay Miller's share of inheritance tax from the residuary of the Trust.

On October 21, 2021, the Trustee filed an inventory, an inheritance tax worksheet, and an application to pay tentative inheritance tax. The inheritance tax worksheet attributed inheritance tax to the share of each beneficiary as follows: $710.50 as to the share of each of the children and $94,627.04 as to the share of Miller. The following day, the court issued an order approving the Trustee's application and allowing payment of the tentative inheritance tax. On October 25, the children filed an objection to the court's order allowing payment of tentative inheritance tax, motion to reconsider, and request for bond. They emphasized that their motion for partial summary judgment could have significant implications

on which beneficiaries of the Trust are responsible for satisfying the applicable inheritance taxes. Accordingly, the children objected to the Trustee's "payment of the entirety of the [inheritance taxes] out of the residuary of the estate."

On November 4, 2021, the county court heard oral arguments on the cross-motions for partial summary judgment. The Trustee and Miller argued that the children "rely heavily" on § 77-2108, which reliance was misplaced because that statute was about estate taxes, not inheritance taxes. The Trustee and Miller argued that Neb. Rev. Stat. § 77-2038 (Reissue 2018) was instead the "relevant" statute. The court received exhibits, including an affidavit by the attorney who had drafted the Trust and its four amendments. The children objected to the following paragraph of the affidavit on relevance grounds: "In writing Section 7a of the Trust, the language used was intended to shift the inheritance tax burden from the beneficiaries to the Trust residuary in order to exonerate the beneficiaries of their tax burden." The county court overruled the objection and received into evidence the affidavit in its entirety.

On November 19, 2021, the county court granted Miller's motion for partial summary judgment on the inheritance tax issue and overruled the children's motion. The court additionally overruled the children's objection to the court's order allowing tentative payment of inheritance tax, motion to reconsider, and request for bond. The court found the "clear language" of the Trust "sufficiently precise" to support its holding, comparing the case to *In re Estate of Shell*.[1] The court observed that the drafter's affidavit was corroborative and clarified the Decedent's intention. The court also concluded that the children's "reliance on the language of . . . § 77-2108 is misplaced and has no application concerning payment of inheritance taxes."

---

[1] *In re Estate of Shell*, 290 Neb. 791, 862 N.W.2d 276 (2015).

On November 24, 2021, Miller filed a motion for sanctions against the children pursuant to Neb. Rev. Stat. §§ 25-824 and 30-3893 (Reissue 2016), asserting that their claims were frivolous and in bad faith. On December 10, 2021, and January 13, 2022, the children voluntarily dismissed, without prejudice, their undue influence claim and their claims for removal of the Trustee and an accounting, respectively. On March 4, the children moved the court for an order determining appropriate trust fund reserves for the remainder of litigation.

On March 22, 2022, the county court issued an order denying Miller's motion for sanctions and the children's motion to determine appropriate reserves. On April 6, 2022, the children purported to appeal the November 19, 2021, order granting Miller partial summary judgment (Apportionment Order) and the August 27, 2021, order granting a change of venue. The children also asserted that the county court erred in receiving the affidavit of the Decedent's legal counsel construing the trust language. Miller then moved the Nebraska Court of Appeals for summary dismissal or affirmance, arguing that the children's first two assigned errors were untimely and that the third failed to present a substantive legal issue. Miller's motion was denied. Before the Court of Appeals addressed the children's appeal, we moved it to our docket.[2]

## ASSIGNMENTS OF ERROR

The children assign, restated, that the county court erred in (1) receiving extrinsic evidence at the hearing on the parties' cross-motions for partial summary judgment to determine the Decedent's intent; (2) ordering that all inheritance taxes, as well as legal and administrative expenses, be paid out of the Trust's residuary instead of proportionally among the Trust's beneficiaries; and (3) transferring the case to Scotts Bluff County.

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

## STANDARD OF REVIEW

[1] A jurisdictional issue that does not involve a factual dispute presents a question of law.[3]

## ANALYSIS

[2,3] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[4] For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[5] The Legislature has defined the term "judgment" as "'the final determination of the rights of the parties in an action.'"[6] Conversely, every direction of a court or judge, made or entered in writing and not included in a judgment, is an order.[7]

[4] The four types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, (3) an order affecting a substantial right made on summary application in an action after judgment is rendered, and (4) an order denying a motion for summary judgment when such motion is based on the assertion of sovereign immunity or the immunity of a government official.[8] As applied to this case, § 25-1902 provides that an order "made during a special proceeding" and "affecting a substantial right" is a final order.[9]

---

[3] *Humphrey v. Smith*, 311 Neb. 632, 974 N.W.2d 293 (2022).

[4] *Kingery Constr. Co. v. 6135 O St. Car Wash*, 312 Neb. 502, 979 N.W.2d 762 (2022).

[5] *Ramaekers v. Creighton University*, 312 Neb. 248, 978 N.W.2d 298 (2022).

[6] *Pearce v. Mutual of Omaha Ins. Co.*, 28 Neb. App. 410, 419, 945 N.W.2d 516, 523 (2020) (quoting Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2018)).

[7] *Id.*

[8] See Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022).

[9] Cf. *In re Estate of Larson*, 308 Neb. 240, 953 N.W.2d 535 (2021).

[5,6] A special proceeding entails civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes.[10] The proceedings in this case were undertaken pursuant to the Nebraska Probate Code, which is contained in chapter 30 of the Nebraska Revised Statutes. A proceeding under the Nebraska Probate Code is a special proceeding.[11] Thus, the Apportionment Order is a final order if it affected a "substantial right" within the meaning of § 25-1902.

[7-10] A substantial right is an essential legal right, not a mere technical right.[12] A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.[13] It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[14] Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend.[15] Having a substantial effect on a substantial right depends most fundamentally on whether the right could otherwise effectively be vindicated through an appeal from the final judgment.[16] A substantial right under § 25-1902 is not affected when that right can be effectively vindicated in an appeal from the final judgment.[17]

[11,12] Partial summary judgments are usually considered interlocutory; they must ordinarily dispose of the whole merits of the case to be considered final.[18] However, if an order

---

[10] *Tegra Corp. v. Boeshart*, 311 Neb. 783, 976 N.W.2d 165 (2022).

[11] *In re Estate of Anderson*, 311 Neb. 758, 974 N.W.2d 847 (2022).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] See *id.*

[18] See, e.g., *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

granting partial summary judgment affects a substantial right and is made during a special proceeding, it is final for the purpose of appeal.[19]

[13] We have addressed whether various types of probate orders, in various contexts, were final and appealable. In such cases, we have often held that a consideration regarding the finality of orders in probate cases is whether the order ended a discrete—that is, separate and distinct—phase of the proceedings.[20] An order ending a discrete phase of probate proceedings is final, but one that is merely preliminary to such an order is not.[21] In *In re Estate of Larson*,[22] we approvingly cited one commentator's observation that in the context of multifaceted special proceedings that are designed to administer the affairs of a person, an order that ends a discrete phase of the proceedings affects a substantial right because it finally resolves the issues raised in that phase.

*In re Estate of Larson* involved a personal representative's petition in county court for complete settlement of a decedent's estate.[23] The decedent's son objected to the personal representative's proposed schedule of distribution, alleging that it failed to properly apportion inheritance taxes.[24] The court held a hearing on the son's objection, but ultimately dismissed it.[25] As to inheritance taxes, the court found that

"the inheritance taxes should be paid from the estate and to the extent the residuary estate is unavailable for payment of these expenses, the specific devisees in

---

[19] See *id.*

[20] See, e.g., *In re Estate of Severson*, 310 Neb. 982, 970 N.W.2d 94 (2022).

[21] See *In re Estate of Larson, supra* note 9.

[22] See *id.* (citing John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239 (2001)).

[23] See *id.*

[24] See *id.*

[25] See *id.*

proportion to the share owned by [two beneficiaries] should be reduced for [valid administrative expenses] and inheritance tax."[26] The son appealed the county court's dismissal of his objection.[27]

Upon review, we noted the son's concession that the order dismissing his objection "gave guidance on issues of law but did not address what each party would receive in 'dollars and cents.'"[28] We explained that the county court's order decided some of the issues relevant to the phase of the proceedings before the court, but that that phase would not be completed until the court entered an order disposing of the original petition.[29] Accordingly, we concluded, the order did not affect a substantial right.[30] Because we lacked jurisdiction to address the son's assigned errors, we dismissed his appeal.[31]

In a comparable way, the children argue that several components of their claims remained unresolved when the county court entered the Apportionment Order in November 2021. Therefore, they argue, the Apportionment Order cannot be said to have concluded a discrete phase of the proceedings. On this point, we agree. But the children purport to appeal from the county court's March 22, 2022, order addressing Miller's motion for sanctions and the children's concomitant motion to determine appropriate reserves. The children essentially argue that their appeal from the court's March 22 order is proper because proceedings were "resolved" after it was

---

[26] *Id.* at 243, 953 N.W.2d at 538.

[27] See *id.*

[28] *Id.* at 247, 953 N.W.2d at 540.

[29] *In re Estate of Larson, supra* note 9.

[30] *Id.*

[31] See *id.* See, also, *In re Estate of Rose*, 273 Neb. 490, 495, 730 N.W.2d 391, 395 (2007) (where determinations made by county court were merely "preliminary to a complete determination of the size of the augmented estate which was the fundamental issue before the county court," they did not affect substantial right and were not appealable).

issued. In support of their appeal from the March 22 order, the children reference our prior case *In re Guardianship & Conservatorship of Woltemath*.[32]

In *In re Guardianship & Conservatorship of Woltemath*, we held that when a motion for attorney fees under § 25-824 is made prior to the judgment of the court in which the attorney's services were rendered, the judgment will not become final and appealable until the court has ruled upon that motion.[33] By analogy, the children argue that because the Apportionment Order was not a final order, Miller's motion for sanctions necessarily *prevented* the entry of a final order or judgment until after her motion was resolved. Thus, they essentially argue that the Apportionment Order became appealable once the court addressed Miller's motion for sanctions. We disagree.

For various reasons, the rule from *In re Guardianship & Conservatorship of Woltemath* is inapplicable here. First, as Miller emphasizes, her motion for sanctions was filed after the county court issued the Apportionment Order. Miller correctly argues that a motion for fees under § 25-824 that is filed after a judgment does not stay the time by which an appellant must file its notice of appeal.[34] Perhaps more importantly, however, the Apportionment Order was neither a judgment nor a final order and, assuredly, the children's voluntary dismissal of their remaining claims without prejudice did not turn it into either.[35] Further, the March 22, 2022, order itself cannot be said to have finally disposed of any issues relating

---

[32] *In re Guardianship & Conservatorship of Woltemath*, 268 Neb. 33, 680 N.W.2d 142 (2004).

[33] *Id.* See, also, *Murray v. Stine*, 291 Neb. 125, 864 N.W.2d 386 (2015).

[34] See *Salkin v. Jacobsen*, 263 Neb. 521, 641 N.W.2d 356 (2002) (motion for attorney fees under § 25-824 must be made prior to judgment of court in which attorney's services were rendered).

[35] Cf. *Smith v. Lincoln Meadows Homeowners Assn.*, 267 Neb. 849, 678 N.W.2d 726 (2004).

to inheritance tax liability. Thus, we are not convinced that an appeal from the March 22 order provides a vessel to obtain our review of the children's assigned errors.

Notwithstanding the fact that the children's voluntarily dismissed claims were outstanding when the Apportionment Order was issued and could presumably have affected inheritance tax liability, the Apportionment Order cannot be said to have disposed of a discrete phase of probate proceedings. There is an additional element at play which necessarily precludes such a finding. On October 21, 2021, the Trustee filed an application to pay tentative inheritance tax. On October 22, the county court issued an order allowing payment of tentative inheritance tax pursuant to Neb. Rev. Stat. § 77-2018.07 (Reissue 2018). But the record before us does not include, and the children have not appealed, a final determination of inheritance tax.

Neb. Rev. Stat. § 77-2002(1) (Cum. Supp. 2022) states that "[a]ny interest in property . . . shall be subject to [inheritance] tax . . . if it shall be transferred by deed, grant, sale, or gift . . . and . . . (b) intended to take effect in possession or enjoyment, after his or her death . . . ." Under § 77-2018.07(1), persons subject to inheritance tax may, "prior to the final determination of the inheritance tax," make a tentative payment of the tax in order to avoid the accrual of interest or penalty on such tax. Section 77-2018.07(1) provides that any person who desires to pay such tentative tax shall make a written application to the county court for an order allowing the payment of a sum specified in such application, prior to the final determination of the inheritance tax due. Section 77-2018.07(4) explicitly provides that a tentative tax payment is not a final order and may be amended, altered, or modified by subsequent order of the court.

The county court has jurisdiction to fix the values of the property at issue, assess inheritance tax on the shares of the beneficiaries of the decedent's estate, and determine

therefrom the inheritance tax that is owing.[36] Proceedings for that purpose can be initiated pursuant to Neb. Rev. Stat. § 77-2018.01 (Reissue 2018). Section 77-2018.01(1) provides that the inheritance tax "imposed under sections 77-2001 to 77-2037 may be determined either (a) in any proceedings brought under the provisions of Chapter 30, article 24 or 25, or (b) in a proceeding instituted for the sole purpose of determining such tax." Section 77-2018.01(2) provides that proceedings for a determination of inheritance tax may be initiated "either (a) by order of the county court before which any proceeding is pending, (b) by application of the personal representative, (c) by application of the county attorney, or (d) by application of any person having a legal interest in the property involved in the determination of the tax."

Neb. Rev. Stat. § 77-2023 (Reissue 2018) provides for appeal of the county court's determination of inheritance tax and refers to the same as a "final judgment or final order." Once appealed, a determination of inheritance tax is reviewed for error appearing on the record.[37] Where inheritance tax has already been paid, such litigation does not necessarily present a moot question; Neb. Rev. Stat. § 77-2018 (Reissue 2018) provides a remedy where inheritance tax has been paid in error.[38] Pursuant to § 77-2018, where an erroneous inheritance tax is collected, the ones entitled thereto may recover it by filing an application within 2 years.[39] Such recovery would include any excess over the amount finally determined to be due that was part of a tentative payment.

In light of the applicable statutory scheme, we are inclined to conclude that the children are attempting to obtain our

---

[36] See Neb. Rev. Stat. §§ 77-2021 and 77-2022 (Reissue 2018). See, also, *State ex rel. Nebraska State Bar Assn. v. Richards*, 165 Neb. 80, 84 N.W.2d 136 (1957).

[37] *In re Estate of Kite*, 260 Neb. 135, 615 N.W.2d 481 (2000).

[38] See *In re Estate of Woolsey*, 113 Neb. 218, 202 N.W. 630 (1925).

[39] See *id.* See, also, *In re Estate of Fort*, 117 Neb. 854, 223 N.W. 633 (1929).

review of a discrete phase of probate proceedings regarding inheritance tax liability that has not yet been completed in the county court.

## CONCLUSION

The Apportionment Order was not a final order. An appeal from the March 22, 2022, order addressing Miller's motion for sanctions is not a proper vessel to obtain our review of the errors assigned. Thus, we lack jurisdiction to decide the merits of this matter, and the children's appeal is dismissed.

APPEAL DISMISSED.

HEAVICAN, C.J., not participating.