Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/20/2021 09:14 AM CDT

- 359 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

Fraternal Order of Police Lodge 31,
petitioner, v. City of York,
Nebraska, respondent.

___ N.W.2d ___

Filed May 28, 2021.    No. S-20-588.

1. **Commission of Industrial Relations: Evidence: Appeal and Error.**
   In an appeal from an order by the Commission of Industrial Relations
   regarding prohibited practices, an appellate court will affirm a factual
   finding of the commission if, considering the whole record, a trier of
   fact could reasonably conclude that the finding is supported by a pre-
   ponderance of the competent evidence.
2. **Commission of Industrial Relations: Appeal and Error.** Any order
   or decision of the Commission of Industrial Relations may be modi-
   fied, reversed, or set aside by an appellate court on one or more of the
   following grounds and no other: (1) if the commission acts without or
   in excess of its powers, (2) if the order was procured by fraud or is
   contrary to law, (3) if the facts found by the commission do not support
   the order, and (4) if the order is not supported by a preponderance of the
   competent evidence on the record considered as a whole.
3. **Labor and Labor Relations: Commission of Industrial Relations.**
   Under Nebraska's Industrial Relations Act, the Commission of Indus-
   trial Relations has the authority to decide industrial disputes and to
   determine whether any party to an agreement has committed a prohib-
   ited practice.
4. **Labor and Labor Relations.** The Industrial Relations Act requires par-
   ties to negotiate only mandatory subjects of bargaining.
5. ____. Mandatory subjects of bargaining are set forth in Neb. Rev. Stat.
   § 48-818 (Cum. Supp. 2020) and include the scale of wages, hours of
   labor, or conditions of employment.
6. ____. Management prerogatives, such as the right to hire, to maintain
   order and efficiency, to schedule work, and to control transfers and
   assignments, are not mandatory subjects of bargaining.

- 360 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

7. _____. A matter which is of fundamental, basic, or essential concern to an employee's financial and personal concern may be considered as involving working conditions and is mandatorily bargainable even though there may be some minor influence on educational policy or management prerogative.

8. **Labor and Labor Relations: Contracts.** The threshold question in determining whether a public employer has committed a prohibited practice is often whether a mandatory subject of bargaining was "covered by" the collective bargaining agreement.

9. _____: _____. Under the "contract coverage" rule, a court first analyzes as a simple question of contract interpretation whether the mandatory topic of bargaining was covered by the collective bargaining agreement.

10. **Labor and Labor Relations: Contracts: Waiver.** A court does not analyze whether the parties have clearly and unmistakably waived their rights to bargain over a mandatory subject of bargaining unless the court first finds that the subject was not covered by the collective bargaining agreement.

11. **Labor and Labor Relations: Contracts.** If a topic is covered by the collective bargaining agreement, then the parties have no further obligation to bargain the issue.

12. _____: _____. A subject covered by a collective bargaining agreement has already been fully negotiated, and the public employer, by following the agreement's provisions, does not refuse to negotiate collectively with representatives of collective bargaining agents as required by the Industrial Relations Act or to negotiate in good faith with respect to mandatory topics of bargaining.

13. _____: _____. If a topic is covered by a collective bargaining agreement, then imposing upon an employee the agreement's provisions in relation to that topic does not interfere with, restrain, or coerce that employee in the exercise of rights granted by the Industrial Relations Act or deny the rights accompanying certification or recognition granted by the Industrial Relations Act.

14. _____: _____. Whether an agreement "covers" a mandatory subject of bargaining is considered in light of the policies embodied in the Industrial Relations Act.

15. _____: _____. While vague, all-inclusive statements that employers "may do whatever they please" are insufficient to establish that all topics are thereby covered by a collective bargaining agreement, neither does a collective bargaining agreement have to specifically mention every particular subject for it to be covered by the agreement.

16. _____: _____. A court must bear in mind the importance of finality to collective bargaining during the term of an agreement and reject any

- 361 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

construction that treats an agreement as but a starting point for constant negotiation over every public employer action.

17. **Contracts.** If a contract's terms are clear, a court may not resort to the rules of construction and must give the terms their plain and ordinary meaning as a reasonable person would understand them.

18. ____. A court must consider a contract as a whole and, if possible, give effect to every part of the contract.

Appeal from the Nebraska Commission of Industrial Relations. Affirmed.

Thomas P. McCarty and Gary L. Young, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellant.

Kari A. F. Scheer and Jerry L. Pigsley, of Woods Aitken, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

A bargaining agent brought suit before Nebraska's Commission of Industrial Relations (CIR) against a public employer for prohibited labor practices. The bargaining agent asserted that in relation to a residency requirement for a promotion, the public employer engaged in prohibited labor practices by dealing directly with an employee represented by the bargaining agent, making a unilateral change to the collective bargaining agreement, and refusing to negotiate in good faith over mandatory subjects of bargaining. We affirm.

## BACKGROUND

Fraternal Order of Police Lodge 31 (FOP) is a labor organization as that term is defined in Neb. Rev. Stat. § 48-801(7) (Cum. Supp. 2020) and is the exclusive collective bargaining agent for a bargaining unit consisting of police officers, sergeants, and lieutenants of the York Police Department

- 362 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

(Department). FOP brought this action against the City of York, Nebraska, as the political subdivision that employs FOP's bargaining unit.

## Collective Bargaining Agreements
### and Relevant Provisions

The parties entered into a collective bargaining agreement effective September 22, 2014, through September 30, 2018 (the 2014 agreement). This agreement was to be in effect until a new agreement was reached. Following negotiations in 2018, a new collective bargaining agreement was signed on January 9, 2019, to be effective retroactively starting October 1, 2018, and continuing through September 30, 2020 (the 2019 agreement). During the negotiations leading to the 2019 agreement, neither party demanded the inclusion of any provision related to the issue of a residency requirement applying to FOP members.

Article III of both the 2014 and 2019 agreements contained a management rights provision stating:

Section 3.1 All management rights, functions, responsibilities, and authority not specifically limited by the express terms of this agreement are retained by the City and remain exclusively within the rights of the City.

Section 3.2 [FOP] acknowledges the concept of inherent management rights. These rights, powers, and authority of the City include, but are not limited to the following:

. . . .

e. The right to hire, examine, classify, promote, train, transfer, assign, and retain employees . . . .

. . . .

g. The right to determine, establish, and implement policies for the selection, training, and promotion of employees.

. . . .

j. The right to adopt, modify, change, enforce, or discontinue any existing rules, regulations, procedures, and

- 363 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

policies which are not in direct conflict with any provisions of this Agreement.

Article XI of both agreements also contains the same promotion provision: "Section 11.1 If any position that is represented by [FOP] or will be represented by [FOP] in the future, except Police Officer should become vacant, competitive testing for the position shall be conducted within the Department so long as a qualified candidate shall present himself/herself."

Article XXXII of both agreements also provides that each collective bargaining agreement constitutes the entire agreement and understanding concerning "all proper subjects of collective bargaining for the duration of the contract" and that any "negotiations preceding the signing of this Agreement included negotiations on all proper subjects of bargaining."

Neither agreement contained any provision specifically requiring residency within York County. It is undisputed between the parties that a residency requirement for employment or promotion is a mandatory subject of bargaining.

### York Personnel Rules and Regulations and Department Employment Procedure Policies

While the collective bargaining agreements between FOP and York do not contain a residency requirement, the Department employment procedure policies do. The Department policies were effective June 1, 1995, and revised on October 1, 2010. The minimum qualifications provision, 2.8.1, provides: "E. Residency: It is the policy of the police department that employees live in the county of York. However, at the discretion of the City Administrator, this policy may be waived. This policy shall not preclude recruitment or hiring from outside York County." Establishing residency within York County is also a condition of employment under provision 2.8.3.

York's personnel rules and regulations were effective June 20, 2013, and provide that "[u]pon adoption [by the York City Council], the rules shall supersede any and all personnel

- 364 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

rules, policies, regulations, or procedures previously adopted by the Council." The personnel rules and regulations do not contain any residency requirements.

## Officer Doug Headlee's Promotion and FOP's Demands to Bargain

Requiring residency within York County for promotions was discussed during a sergeant staff meeting on October 3, 2018, between the York chief of police, Edward Tjaden, and the four current sergeants within the Department. FOP president, Sgt. Kim Christensen, testified that Tjaden stated the sergeants should have to live in York County and wondered what the other sergeants thought. Christensen commented that he did not know whether or not they could do that without negotiating it as a residency requirement within their collective bargaining agreement.

On November 13, 2018, Tjaden posted a notice to the incumbent police officers that the Department was establishing an eligibility list for a vacant sergeant position. This notice indicated, among other things, that the chosen candidate would be required to sign a contract in which the candidate agreed to live within York County within 6 months of the promotion.

After the notice was posted, FOP sent a letter to the city clerk, city administrator, mayor of York, and Tjaden demanding to bargain regarding the residency requirement for promotions to sergeant. This letter claimed that the residency requirement was a condition of employment and a mandatory subject of bargaining and, further, that it could be classified as "side dealing."

Officer Doug Headlee was one of four police officers who submitted applications for the sergeant vacancy. Headlee, who is a FOP member, had been a York police officer since 2007. Headlee applied, tested, and interviewed for the promotion to sergeant between November 13, 2018, and January 8, 2019. He submitted a resume and cover letter as required for the application portion; took a written standardized police

- 365 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

supervisor promotional test on December 19, 2018; and then was interviewed by a promotion panel on January 8, 2019. On January 9, Headlee was notified during a personal meeting with Tjaden that he was chosen to receive the promotion. At this meeting, Tjaden presented Headlee with a copy of a residency agreement, and Headlee testified that Tjaden told him that he would have to comply with the terms of the agreement to receive the promotion. Headlee testified that he signed the residency agreement and accepted the promotion the next day on January 10. The residency agreement required Headlee to establish his domicile within York County within 6 months after promotion and allowed him to request a waiver from the city administrator due to personal hardship, but it stated that failure to comply could result in discipline up to and including termination. Headlee started working as a sergeant on January 21.

Negotiations were continuing between FOP and York while Headlee was taking part in the process for his promotion application. The eighth and ninth negotiation sessions occurred in December 2018, after FOP had sent the first demand-to-bargain letter and before Headlee was officially awarded the promotion to sergeant. FOP's proposals submitted for these meetings did not present any proposal restricting management rights in the collective bargaining agreement drafts; nor was there any proposal restricting York from following its residency policy regarding police department employees or regarding promotion criteria that did not include a residency requirement that would have dealt with the establishment of residency as a requirement for promotion to sergeant. The parties also did not discuss or negotiate residency at these negotiation sessions. Christensen testified that there were discussions about the demand-to-bargain letter, but that no specifics were really discussed. FOP took the lead in putting together the proposals that became the 2019 agreement.

After the 2019 agreement was signed and Headlee had been promoted to sergeant and had signed a residency agreement

- 366 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

agreeing to move to York County within 6 months, FOP sent a second demand to York to bargain regarding a residency requirement for promotions to sergeant. This letter acknowledged that York had not responded to the previous request to bargain and that the 2019 agreement did not contain any provision covering residency requirements for incumbent employees. FOP requested that York immediately halt and rescind any actions York had taken to implement a residency requirement and any attempts to "side deal and/or directly deal" with FOP members regarding employment agreements.

Eventually a negotiation meeting was set up on March 19, 2019, to discuss FOP's demand to bargain over the residency and promotion issue. The meeting ended when the council members told the FOP representatives, "I guess we'll see you in court because we're not interested. He's a new employee." The York city administrator, Joseph Frei, then sent a letter to Christensen dated March 29, 2019, formally denying FOP's request to bargain. Frei explained that the residency policy was adopted by the Department on June 1, 1995; was revised on October 1, 2010; and has remained in force and effect at all times since and, as such, remained an established policy of the Department and not a new policy to negotiate.

FOP filed a prohibited practice petition with the CIR on April 30, 2019, commencing this action.

### Trial Before CIR

Trial was held before the CIR on October 1, 2019. Headlee, Tjaden, Frei, Christensen, and York police officer Shawn Humphrey testified.

Headlee testified that he has always lived in Lincoln, Nebraska, even while employed as a York police officer. When he was hired in 2007, he spoke with the chief of police at the time, Don Klug, regarding where he was able to reside. Headlee stated that he did not sign any kind of contract or receive any written waiver to live outside of York County, but that Klug allowed him to live outside of York County. He

- 367 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

testified that of the 12 certified law enforcement officers currently employed by the Department, 4 currently reside outside of York County, all police officers. Headlee testified that he was aware the Department has a residency policy, but that to his knowledge, the Department had never required residency as a condition of promotion for incumbent employees promoted to sergeant, nor had he ever had to comply with such a requirement as a police officer.

By the time of trial, Headlee had not complied with the residency requirement, nor had he requested a waiver from the city administrator. Headlee testified that he gave notice to his FOP representative regarding the residency requirement in November 2018, asking FOP to determine the validity of the residency requirement as it pertained to promoted employees, but continued to go through the promotion application process. It was as a result of that notice that FOP had requested, in its first letter, to negotiate.

Humphrey, who has been employed with the Department since 2006, testified that he also lives outside of York County. Humphrey testified that there is a policy with regard to police officers which includes residency, but that Klug gave him permission to live outside of York County. Humphrey testified that Klug told him he was grandfathered in and that the residency requirements did not apply to him. Humphrey did not receive anything in writing from Klug so stating. Humphrey has not received a written waiver or sought one from Tjaden or the city administrator, but he testified that he is not currently required to comply with the residency policy.

Christensen testified that he has been an employee of the Department for 44 years, 20 of those years as a sergeant. He testified that in none of the approximately dozen collective bargaining negotiations in which he had participated had residency ever been specifically addressed. Nor had it been established as a requirement for promotion of incumbent employees. He testified that in all the years of his employment with the Department, an incumbent officer who was promoted to

sergeant had never been required to sign a residency agreement with York, nor had the Department ever required residency as a condition of promotion for incumbent employees.

Christensen acknowledged that the Department has a published policy that contains an item regarding residency for police officers, but that it does not specifically mention sergeant promotions. He testified that it has always been common knowledge, even though not worded that way in the policy, that the residency requirement applied only to new hires. Christensen explained that FOP's issues were only with the residency requirement applying to the promotion of incumbent employees.

Frei testified that the residency agreement signed by Headlee allowed for a waiver that had to be requested by the employee to avoid the residency requirement. Frei testified that Headlee never requested a waiver. Frei acknowledged that the York personnel rules and regulations, effective in 2013, stated they superseded all other policies approved by the city council and that the Department residency policies were internal policies that did not have to be approved by the city council.

Tjaden testified that when he prepared the notice for the promotion and entered into an agreement with Headlee regarding moving to York County within 6 months of the promotion, he believed these actions were management rights covered by the agreements and he did not need FOP's consent. Tjaden testified that he made it clear to Headlee when he offered him the promotion that the residency requirement was important to Tjaden and also to the city administrator. He expressly asked Headlee not to sign the agreement if his intent was not to move. After a discussion and modifications were made to the residency agreement and Headlee had signed the contract, Tjaden thought that meant he was going to comply with the agreement. Tjaden testified that it became clear approximately 2 weeks later, when another demand-to-bargain letter was filed, that Headlee was not going to abide by the agreement. Tjaden stated that Headlee never mentioned he wanted to have

- 369 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

a FOP representative present during any of the discussions about the promotion offer.

## Order of CIR

The CIR dismissed the petition and refused to award attorney fees, because the parties' actions did not rise to the level of egregious, willful, flagrant, aggravated, persistent, or pervasive behavior that would be appropriate for an award of attorney fees.

The CIR acknowledged that mandatory subjects of bargaining must be bargained for before, during, and after the expiration of a collective bargaining agreement unless clearly waived. However, if a mandatory subject of bargaining is "covered by" the collective bargaining agreement, no further bargaining is required. The CIR determined that York unambiguously has the right to promote employees and that the promotion policies are "covered by" sections 3.2(g) and 3.2(j) of the agreements. The CIR determined that York did not engage in direct dealing when it entered into the residency agreement with Headlee, because York was just "implementing its promotion policy; not undercutting the authority of a collective bargaining agreement by negotiating directly with an individual employee regarding a mandatory subject of bargaining."

## ASSIGNMENTS OF ERROR

FOP assigns that the CIR erred when it (1) dismissed the petition, finding that the issues raised therein were "covered by" the bargaining agreements, thereby absolving York of its duty to bargain with FOP over the residency requirement; (2) incorrectly applied controlling Nebraska precedent regarding the "contract coverage" rule; (3) applied a relaxed waiver standard to hold York was absolved from bargaining with FOP over the implementation of the residency requirement based upon broad and nonspecific management rights provisions; (4) held the bargaining agreements' provisions granted York the authority to deal directly with an FOP bargaining unit

member regarding residency; (5) found York did not commit a prohibited labor practice under Neb. Rev. Stat. § 48-824(1) and (2)(a), (e), and (f) (Cum. Supp. 2020) when it implemented a residency requirement without bargaining with FOP to impasse, and (6) found York did not commit a prohibited labor practice under § 48-824(1) and (2)(a), (e), and (f) when it dealt directly with an FOP bargaining unit member regarding residency requirements.

## STANDARD OF REVIEW

[1] In an appeal from an order by the CIR regarding prohibited practices, an appellate court will affirm a factual finding of the CIR if, considering the whole record, a trier of fact could reasonably conclude that the finding is supported by a preponderance of the competent evidence.[1]

[2] Any order or decision of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole.[2]

## ANALYSIS

[3] Under Nebraska's Industrial Relations Act,[3] the CIR has the authority to decide industrial disputes and to determine whether any party to an agreement has committed a prohibited practice.[4] Section 48-824 defines prohibited practices.

---

[1] *Scottsbluff Police Off. Assn. v. City of Scottsbluff*, 282 Neb. 676, 805 N.W.2d 320 (2011).

[2] *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 817 N.W.2d 250 (2012). See Neb. Rev. Stat. § 48-825 (Reissue 2010).

[3] Neb. Rev. Stat. §§ 48-801 through 48-839 (Reissue 2010 & Cum. Supp. 2020).

[4] §§ 48-819.01 and 48-824.

- 371 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

FOP alleged in its petition to the CIR that York committed a prohibited practice in violation of § 48-824(1) and (2)(a), (e), and (f).

Section 48-824(1) states: "It is a prohibited practice for any public employer, public employee, public employee organization, or collective-bargaining agent to refuse to negotiate in good faith with respect to mandatory topics of bargaining." The relevant provisions of § 48-824(2) provide:

It is a prohibited practice for any public employer or the public employer's negotiator to:

(a) Interfere with, restrain, or coerce employees in the exercise of rights granted by the Industrial Relations Act;

. . . .

(e) Refuse to negotiate collectively with representatives of collective-bargaining agents as required by the Industrial Relations Act;

(f) Deny the rights accompanying certification or recognition granted by the Industrial Relations Act[.]

[4-6] The Industrial Relations Act requires parties to negotiate only mandatory subjects of bargaining.[5] Mandatory subjects of bargaining are set forth in § 48-818 and include the scale of wages, hours of labor, or conditions of employment.[6] Management prerogatives, such as the right to hire, to maintain order and efficiency, to schedule work, and to control transfers and assignments, are not mandatory subjects of bargaining.[7]

[7] A matter which is of fundamental, basic, or essential concern to an employee's financial and personal concern may be considered as involving working conditions and is mandatorily bargainable even though there may be some minor influence on educational policy or management prerogative.[8]

---

[5] *Service Empl. Internat. v. Douglas Cty. Sch. Dist.*, 286 Neb. 755, 839 N.W.2d 290 (2013).

[6] *Id.*

[7] *Id*.

[8] *Id.*

- 372 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

York acknowledges that the CIR has previously held that a residency requirement that affects incumbent employees is a condition of employment and, therefore, a mandatory subject of bargaining.[9] The CIR again so decided below, and neither party disputes that decision.

[8-10] As we explained in *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*,[10] the threshold question in determining whether a public employer has committed a prohibited practice is often whether a mandatory subject of bargaining was "covered by" the collective bargaining agreement. Under the "contract coverage" rule, we first analyze as a simple question of contract interpretation whether the mandatory topic of bargaining was covered by the collective bargaining agreement.[11] We do not analyze whether the parties have clearly and unmistakably waived their rights to bargain over a mandatory subject of bargaining unless we first find that the subject was not covered by the collective bargaining agreement.[12]

[11-13] If a topic is covered by the collective bargaining agreement, then the parties have no further obligation to bargain the issue.[13] A subject covered by a collective bargaining agreement has already been fully negotiated, and the public employer, by following the agreement's provisions, does not refuse to negotiate collectively with representatives of collective bargaining agents as required by the Industrial Relations Act or to negotiate in good faith with respect to mandatory topics of bargaining.[14] Further, if a topic is covered by a collective bargaining agreement, then imposing upon an employee

---

[9] *City of Omaha v. Omaha Police Union Local No. 101*, No. 388, 1981 WL 633366 (C.I.R. Jan. 27, 1981).

[10] *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty., supra* note 2.

[11] See *id.*

[12] See *id.*

[13] See *id.*

[14] See *id.*

- 373 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

the agreement's provisions in relation to that topic does not interfere with, restrain, or coerce that employee in the exercise of rights granted by the Industrial Relations Act or deny the rights accompanying certification or recognition granted by the Industrial Relations Act.

[14,15] Whether an agreement "covers" a mandatory subject of bargaining is considered in light of the policies embodied in the Industrial Relations Act.[15] While vague, all-inclusive statements that employers "may do whatever they please" are insufficient to establish that all topics are thereby covered by a collective bargaining agreement,[16] neither does a collective bargaining agreement have to specifically mention every particular subject for it to be covered by the agreement.[17]

[16] We must bear in mind the importance of finality to collective bargaining during the term of an agreement and accordingly reject any construction that treats an agreement as but a starting point for constant negotiation over every public employer action.[18] In determining whether a topic is covered by an agreement, we consider whether the topic is "'within the compass'" of the terms of the agreement[19] or it is instead wholly absent or contained in so broad and vague a reservation as to negate the requirement of bargaining in good faith regarding subjects of mandatory bargaining.[20] "For a subject to be deemed covered, there need not be an 'exact congruence' between the matter in dispute and a provision of the

---

[15] See *Fed. Bur. of Prisons v. Fed. Labor Relations Auth.*, 654 F.3d 91 (D.C. Cir. 2011).

[16] *Omaha Police Union Local 101 v. City of Omaha*, No. 1121, 2007 WL 5114425 at *7 (C.I.R. Feb. 27, 2007).

[17] See *Wilkes-Barre Hosp. Company, LLC v. N.L.R.B.*, 857 F.3d 364 (D.C. Cir. 2017).

[18] *Fed. Bur. of Prisons v. Fed. Labor Relations Auth., supra* note 15.

[19] *Wilkes-Barre Hosp. Company, LLC v. N.L.R.B., supra* note 17, 857 F.3d at 377.

[20] See *Omaha Police Union Local 101 v. City of Omaha, supra* note 16.

- 374 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

agreement, so long as the agreement expressly or implicitly indicates the parties reached a negotiated agreement on the subject."[21]

The CIR found that while a "residency requirement" was not specifically mentioned in the agreements and there appeared to be no provision for such a requirement for incumbent employees' continued employment, sections 3.2(g) and 3.2(j) of the agreements unambiguously granted to the Department the right to adopt and implement promotion policies not in direct conflict with the agreements. And the CIR found it was within the compass of the agreements for the Department to impose a residency requirement as part of the selection and promotion of a police sergeant. The relevant provisions in the agreements, the CIR explained, were sufficiently narrow in scope that they did not negate the purpose of a collective bargaining agreement.

[17,18] We agree. Section 3.2(g) specifically grants to the Department the right to determine, establish, and implement policies for promotion of employees, and section 3.2(j) gives the Department the right to adopt, modify, change, enforce, or discontinue any policies that are not in direct conflict with any provisions of the agreements. If a contract's terms are clear, a court may not resort to the rules of construction and must give the terms their plain and ordinary meaning as a reasonable person would understand them.[22] A court must consider a contract as a whole and, if possible, give effect to every part of the contract.[23] The plain and ordinary meaning of these provisions is that the Department decides the conditions for promotion.

It would be contrary to the freedom of negotiations and the finality of the negotiated agreements to impose, contrary to

---

[21] *Fed. Bur. of Prisons v. Fed. Labor Relations Auth., supra* note 15, 654 F.3d at 94-95.

[22] *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

[23] *Id.*

- 375 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE v. CITY OF YORK
Cite as 309 Neb. 359

their plain language, the requirement that they delineate what specific types of conditions for promotion can be imposed under the changing circumstances management would be trying to address through its promotions decisions. While the reservations in the agreements to determine the conditions of promotion are broad, these provisions are not simply vague, all-inclusive statements that the Department may do whatever it pleases for all topics.

The Department decided that one of those conditions was residency in York County. That condition was within the compass of the agreements. Because the condition of residency for Headlee's promotion was covered by the collective bargaining agreement, the Department did not commit any of the prohibited practices alleged by FOP.

## CONCLUSION

We affirm the decision of the CIR.

AFFIRMED.