Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/01/2024 09:17 AM CST

- 28 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

Fraternal Order of Police Lodge #88, appellee,
v. State of Nebraska, appellant.

___ N.W.2d ___

Filed March 1, 2024.    No. S-22-748.

1. **Commission of Industrial Relations: Appeal and Error.** Any order
   or decision of the Commission of Industrial Relations may be modi-
   fied, reversed, or set aside by an appellate court on one or more of the
   following grounds and no other: (1) if the commission acts without or
   in excess of its powers, (2) if the order was procured by fraud or is
   contrary to law, (3) if the facts found by the commission do not support
   the order, and (4) if the order is not supported by a preponderance of the
   competent evidence on the record considered as a whole.
2. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a
   factual dispute presents a question of law.
3. **Judgments: Questions of Law: Claim Preclusion: Issue Preclusion:
   Appeal and Error.** The applicability of claim and issue preclusion is a
   question of law. On a question of law, an appellate court reaches a con-
   clusion independent of the court below.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues
   presented for review, it is the duty of an appellate court to determine
   whether it has jurisdiction over the matter before it.
5. **Courts: Appeal and Error.** An appellant's designation of the wrong
   court in the notice of appeal is not necessarily fatal.
6. **Judgments: Issue Preclusion.** Issue preclusion applies where (1) an
   identical issue was decided in a prior action, (2) the prior action resulted
   in a final judgment on the merits, (3) the party against whom the doc-
   trine is to be applied was a party or was in privity with a party to the
   prior action, and (4) there was an opportunity to fully and fairly litigate
   the issue in the prior action.

Appeal from the Commission of Industrial Relations.
Reversed and remanded with directions.

- 29 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

Mark A. Fahleson and Tara L. Paulson, of Rembolt Ludtke, L.L.P., for appellant.

Milissa D. Johnson-Wiles and Gary L. Young, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

The Fraternal Order of Police Lodge #88 (FOP 88) is the bargaining representative of the protective service bargaining unit (PSBU). In that capacity, FOP 88 petitioned the Commission of Industrial Relations (CIR) to clarify that the PSBU includes corrections unit case managers or to amend the PSBU to include them. The CIR subsequently issued an order clarifying that pursuant to its 2018 order certifying FOP 88 as the PSBU's bargaining representative, the PSBU has included and will continue to include all employees with the position title of corrections unit case manager. The State of Nebraska appeals that order of clarification. Because the CIR erred in giving preclusive effect to the 2018 order, we reverse the CIR's order of clarification and remand the matter to the CIR to again rule on whether the PSBU includes corrections unit case managers based on the existing record and to provide an explanation that forms the basis for its ruling.

## BACKGROUND

The State Employees Collective Bargaining Act (Bargaining Act)[1] created 12 bargaining units for all state agencies except the University of Nebraska, Nebraska state colleges, and other constitutional offices.[2] One unit is the "[p]rotective

---

[1] Neb. Rev. Stat. §§ 81-1369 to 81-1388 (Reissue 2014).

[2] § 81-1373(1).

- 30 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

[s]ervice" unit, which is composed of "institutional security personnel, including correctional officers, building security guards, and similar classes."[3] Another unit is composed of employees who are supervisors.[4] Generally, supervisors are not to be included in a bargaining unit with other employees who are not supervisors.[5] "Supervisor" is defined as

> any public employee having authority, in the interest of the public employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other public employees, or responsibility to direct them, to adjust their grievances, or effectively to recommend such action, if in connection with such action the exercise of such authority is not of a merely routine or clerical nature but requires the use of independent judgment.[6]

Immediately prior to 2018, the PSBU was represented by the Nebraska Association of Public Employees (NAPE) Local 61. In that capacity, NAPE Local 61 negotiated labor contracts with the State covering the periods from July 1, 2015, through June 30, 2017, and from July 1, 2017, through June 30, 2019. Both those contracts generally provided that they "pertain[ed] to bargaining unit employees who occup[ied] the position class titles set forth specifically in Appendix A." Appendix A listed the title of corrections unit case manager along with the job code P66442 as part of the PSBU. However, both contracts also excluded employees who "occup[ied] positions identified as supervisory . . . either as agreed upon by the [e]mployer and the [u]nion or as identified at any time by the [CIR] or court of proper jurisdiction."

---

[3] § 81-1373(1)(f).

[4] § 81-1373(1)(l).

[5] *Hamilton Cty. EMS Assn. v. Hamilton Cty.*, 291 Neb. 495, 866 N.W.2d 523 (2015).

[6] Neb. Rev. Stat. § 48-801(14) (Reissue 2021).

- 31 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

2018 Certification Proceeding

In May 2018, FOP 88 filed a petition with the CIR seeking to decertify NAPE Local 61 as the PSBU's bargaining representative and have itself certified instead. That petition, which named NAPE Local 61 and the State as respondents, alleged that the bargaining unit "shall include the following job classifications currently employed by the State of Nebraska which are occupationally and functionally related and who have a community of interest with one another due to the nature of their work." Corrections unit case manager was among the job classifications listed. However, no job code was given for that classification or for any other job classification. The petition also stated that "some of these classes may currently be vacant."

In its answer, the State denied those allegations on the basis that it was without knowledge or information sufficient to form a belief as to the truth of the allegations.

Subsequently, in July 2018, the CIR issued an order certifying FOP 88 as the exclusive collective bargaining agent for the PSBU. The CIR's order stated that corrections unit case manager was one of the "positions" included in the PSBU. The order, like the petition, did not specify job codes for any position.

FOP 88 and the State then began negotiations. However, according to subsequent testimony, the State refused to bargain as to corrections unit case managers in the belief that corrections unit case managers were supervisors under § 48-801(14) and, thus, excluded from the PSBU under the Industrial Relations Act.[7] The labor contract for 2019-21 is not part of the record on appeal. However, in the 2021-23 contract, corrections unit case managers are not listed in appendix A as part of the PSBU.

---

[7] Neb. Rev. Stat. §§ 48-801 to 48-839 (Reissue 2021).

- 32 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

2021 Petition to Clarify or
Amend Bargaining Unit

On May 28, 2021, FOP 88 petitioned the CIR to clarify or amend the PSBU to include corrections unit case managers. The petition alleged that the PSBU was the most appropriate bargaining unit for corrections unit case managers because they were institutional security personnel under the Bargaining Act. The petition also alleged that the work of corrections unit case managers was more closely aligned with the work of employees in the PSBU than with the work of employees in any other unit and that corrections unit case managers were occupationally and functionally related to and shared a community of interest with employees in the PSBU. In addition, the petition alleged that corrections unit case managers were not supervisors under § 48-801(14) and, thus, were not excluded from bargaining under the Industrial Relations Act.

In its answer, the State denied the aforementioned allegations and asserted affirmative defenses that are not relevant to our decision on appeal.

Evidence Presented at Hearing

The CIR held a hearing at which FOP 88 presented testimony that when the union sought to decertify NAPE Local 61, it contacted the State's "[c]hief negotiator" for a list of all employees in the bargaining unit. According to the testimony, FOP 88 was informed that at "some point in time," the State took corrections unit case managers out of the PSBU and "put them into the supervisory unit," and that "NAPE never objected."

The State, in turn, presented testimony that the job code in the class specification for corrections unit case managers begins with a "V," not a "P," unlike the job codes given in prior labor contracts. The State's witness also testified that "V" codes designated "supervisory positions" and that all employees whom the Department of Correctional Services could identify from

- 33 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

its records as having held the position of corrections unit case manager had a "V" job code.

There was also other evidence and testimony regarding corrections unit case managers' role within the Department of Correctional Services. That evidence is summarized below as it relates to our analysis of the parties' arguments on appeal.

### CIR ORDER CLARIFYING CORRECTIONS UNIT CASE MANAGERS INCLUDED IN PSBU

Following the hearing, the CIR issued an order clarifying that the PSBU "has included, and will continue to include[,] all employees with the position title of 'Corrections Unit Case Manager[]' pursuant to the [2018] Certification Order."

The CIR began by reviewing the foregoing information about the 2018 proceeding, its prior order, the State's subsequent refusal to bargain as to corrections unit case managers, and the "P" and "V" job codes that the State claimed were associated with the position title. The CIR then stated as follows:

In 2018, the issue was before us whether Corrections Unit Case Managers were part of the bargaining unit and we made a specific finding that they were . . . . At the trial of the present matter, we learned the State was quietly using two different classifications of Corrections Unit Case Managers before the FOP filed the petition seeking to decertify NAPE as the bargaining representative for the PSBU, the State was doing so during those proceedings, and has continued doing so since we entered the Certification Order finding that [FOP 88] should be certified as the bargaining representative for the PSBU and finding that the PSBU included Corrections Unit Case Managers. Yet, during those proceedings it said nothing about its position that some Corrections Unit Case Managers are not Corrections Unit Case Managers. We further note that it did not appeal the finding that [the] PSBU included Corrections Unit Case Managers. Rather, it appears it simply ignored the order of the

- 34 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

Commission and continued taking the position that the employees who are Corrections Unit Case Managers are not Corrections Unit Case Managers for purposes of the 2018 order. For purposes of the action before us, we do not recognize the State's unilateral differentiation of Corrections Unit Case Managers.

The State has not offered any evidence to explain the alleged differences in duties and responsibilities between the empty position of "P66442 Case Manager" and the "V66442 Case Manager" position that is actually used. There is no reason to believe that there is any difference between the Corrections Unit Case Managers referred to in the Certification Order and previous labor contracts, and those referred to in [the class specification for corrections unit case managers]. Nor has the State offered any evidence to show that the Certification Order was specifically referring to "P66442 Case Managers." The language of the Certification Order itself does not distinguish between different classifications of Corrections Unit Case Managers, and it makes no mention of classification codes. It explicitly states that "Corrections Unit Case Managers" are included in the PSBU. . . . Thus, there is no reason to think that this order was limited to one classification of Corrections Unit Case Managers at the exclusion of any others. Specifically, there is no reason to think the Certification Order was referring to an empty and never-used position code, at the exclusion of the position that employees actually fill. All Corrections Unit Case Managers, whether classified now by the [State] as within the "P" code or "V" code[,] are Corrections Unit Case Managers and are included in the PSBU.

The CIR acknowledged the State's argument that corrections unit case managers were supervisors under § 48-801(14) and, as such, excluded from the PSBU under the Industrial Relations Act. However, the CIR concluded by summarily

- 35 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

rejecting that argument, stating only that the State failed to prove that corrections unit case managers exercised any of the statutorily enumerated duties of supervisors with the requisite degree of independent judgment.

The State appeals. We moved the matter to our docket upon the State's motion to bypass review by the Nebraska Court of Appeals.[8]

## ASSIGNMENTS OF ERROR

The State assigns, restated and reordered, that the CIR erred in (1) determining that corrections unit case managers were not supervisors under § 48-801(14); (2) allowing corrections unit case managers to be placed in the same bargaining unit as subordinates, in violation of § 48-816(3); (3) impliedly construing the term "institutional security personnel" in § 81-1373(1)(f) to include corrections unit case managers; (4) impliedly determining that corrections unit case managers were occupationally and functionally related to and shared a community of interest with other employees in the PSBU; and (5) determining that corrections unit case managers with the "V" job code were at issue and included in the 2018 certification order and thus cannot be removed from the PSBU.

## STANDARD OF REVIEW

[1] Any order or decision of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole.[9]

---

[8] See Neb. Rev. Stat. § 24-1106 (Cum. Supp. 2022).

[9] *Fraternal Order of Police v. City of York*, 309 Neb. 359, 960 N.W.2d 315 (2021).

- 36 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

[2-3] A jurisdictional issue that does not involve a factual dispute presents a question of law.[10] The applicability of claim and issue preclusion is a question of law.[11] On a question of law, an appellate court reaches a conclusion independent of the court below.[12]

## ANALYSIS

### This Court Has Jurisdiction
### Over State's Appeal

[4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[13] Following oral arguments, FOP 88 moved to dismiss the State's appeal on the ground that we lack subject matter jurisdiction because the "Notice of Intention to Appeal" the State filed with the CIR indicated an intention to appeal to the Court of Appeals, and not this court, as FOP 88 claims is required under the Bargaining Act. The State opposes that motion, arguing that it properly filed the notice with the Court of Appeals under the Industrial Relations Act.

Both the Industrial Relations Act and the Bargaining Act provide for appeals of CIR decisions. However, § 48-825(3) of the Industrial Relations Act provides for appeals of "any decision or order of the [CIR]" to the Court of Appeals.[14] Section 81-1387(3) of the Bargaining Act once similarly authorized appeals to the Court of Appeals.[15] However,

---

[10] *In re Hessler Living Trust*, 313 Neb. 607, 985 N.W.2d 589 (2023).

[11] *Boone River, LLC v. Miles*, 314 Neb. 889, 994 N.W.2d 35 (2023), *modified on denial of rehearing* 315 Neb. 413, 996 N.W.2d 629.

[12] *Id*.

[13] *McPherson v. Walgreens Boot Alliance*, 314 Neb. 875, 993 N.W.2d 679 (2023).

[14] See, also, § 48-812 (providing for appeals to Court of Appeals).

[15] See 2011 Neb. Laws, L.B. 397, § 32 (striking reference to Court of Appeals and replacing it with reference to Supreme Court).

- 37 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

§ 81-1387(3) was amended in 2011 to provide for "any decision or order of the [CIR]" to be appealed to this court.[16]

The present case involves a proceeding to clarify or amend a certified bargaining unit under the CIR's "Rule 12."[17] In its order in the present case, the CIR takes the view that it promulgated Rule 12 pursuant to its authority under § 48-838 of the Industrial Relations Act to determine the appropriate unit for bargaining purposes. The parties do not appear to dispute that proceedings to clarify or amend the bargaining units for state employees generally are governed by the Industrial Relations Act. However, FOP 88 argues that based on our decision in *Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011*,[18] the phrase "any decision or order of the [CIR]" in § 81-1387(3) must be construed to "mean[] *any order*[,] including orders regarding unit clarification."[19] As such, FOP 88 claims that the Bargaining Act is inconsistent with the Industrial Relations Act, because the Bargaining Act provides for appeals to this court, while the Industrial Relations Act provides for appeals to the Court of Appeals. Therefore, FOP 88 argues that the Bargaining Act's provisions regarding appeals govern, because the Bargaining Act expressly states that it prevails when it is inconsistent with the Industrial Relations Act.[20]

---

[16] See *id*. See, also, *id*., § 28 (adding new § 81-1383(5), which provides for appeals to Supreme Court).

[17] See Rules of the Nebraska Commission of Industrial Relations 12 (rev. 2015).

[18] *Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011*, 269 Neb. 956, 698 N.W.2d 45 (2005).

[19] Brief for appellee in support of motion to dismiss at 4.

[20] See § 81-1372. See, also, *State v. State Code Agencies Teachers Assn.*, 280 Neb. 459, 788 N.W.2d 238 (2010) (Industrial Relations Act and Bargaining Act were inconsistent where negotiations pursuant to former required comparable figures to set salaries, while latter required 2-year contracts negotiated on rigid timeline, which could expire before comparability data was available).

- 38 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

We agree with FOP 88 that in light of our decision in *Hyannis Ed. Assn.*, § 81-1387(3) of the Bargaining Act encompasses orders regarding unit clarification and, as such, is inconsistent with the Industrial Relations Act, with the result that § 81-1387(3) of the Bargaining Act governs the present appeal.[21] *Hyannis Ed. Assn.* concerned the proper standard of review in an appeal of a case involving wages and working conditions brought under the Industrial Relations Act.[22] Section 48-825(4) of the Industrial Relations Act sets forth a standard of review applicable to "[a]ny order or decision of the [CIR]." This standard of review had previously been applied to proceedings involving allegations of prohibited practices.[23] However, prohibited practices are referenced in § 48-825(1) and (2) of the Industrial Relations Act, while wages and working conditions are not. We nonetheless found that the standard of review set forth in § 48-825(4) also applied to proceedings involving wages and working conditions, because § 48-825(4) refers to "[a]ny order or decision of the [CIR]." We reasoned that the term "any" "signifie[d] broad application of the standard of review enunciated therein."[24]

Section 81-1387(3) of the Bargaining Act uses virtually identical language in providing for "[a]ny decision or order of the [CIR]" to be appealed to this court. As such, there is no basis for construing "any" in § 81-1387(3) more narrowly than we construed that same term of § 48-825(4) in *Hyannis Ed. Assn*. Other courts have applied the canon of construction that """"[W]here the same word or group of words is used

---

[21] See, also, *Nebraska Protective Servs. Unit v. State*, 299 Neb. 797, 910 N.W.2d 767 (2018) (removing appeal regarding FOP 88's petition to decertify collective bargaining agent for PSBU and have itself certified instead, to this court by order of Clerk of Supreme Court).

[22] *Hyannis Ed. Assn., supra* note 18.

[23] See *id*. (collecting cases).

[24] *Id*. at 963, 698 N.W.2d at 52.

- 39 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

in . . . different statutes, if the acts are similar in intent and character the same meaning may be attached to them." '"[25] We agree that such an approach is warranted here insofar as nothing in the statutes' context indicates otherwise.[26]

[5] However, we do not agree with FOP 88's related argument that the State's statement of its intention to appeal to the Court of Appeals is a "jurisdictional defect" that precludes us from exercising appellate jurisdiction over the present matter.[27] Previously, in *In re Guardianship of Breeahana C.*,[28] the Nebraska Court of Appeals found that it had jurisdiction where the appellant incorrectly designated the district court, rather than the Court of Appeals, as the court to which he intended to appeal an order of the county court in a guardianship matter.[29] In so doing, the Court of Appeals observed that other courts have found that "an appellant's designation of the wrong court in the notice of appeal is not necessarily fatal."[30] The Court of Appeals also observed that the courts taking this view "seem[ed] to base their holdings in favor of the appellant upon the notion that the court officials can correct the error" and

---

[25] *People ex rel. E.S. v. Superintendent, Livingston Corr. Facility*, 40 N.Y.3d 230, 236, 219 N.E.3d 353, 357, 196 N.Y.S.3d 713, 716 (2023). See, also, *Savage v. Pierson*, 123 Nev. 86, 157 P.3d 697 (2007); *L & M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920 (Tex. Civ. App. 1979).

[26] See, e.g., *State ex rel. Kelsey v. Smith*, 335 Mo. 1125, 75 S.W.2d 832 (1934) (same words, occurring in different statutes of somewhat similar character, do not necessarily bear the same interpretation; their meaning is influenced by particular context, and sometimes by object to be attained by statute itself).

[27] Brief for appellee in support of motion to dismiss at 7.

[28] *In re Guardianship of Breeahana C.*, 14 Neb. App. 182, 706 N.W.2d 66 (2005).

[29] Cf. Neb. Rev. Stat. § 30-1601 (Cum. Supp. 2022) (appeals in guardianship matters lie to Court of Appeals in same manner as appeals from district court).

[30] *In re Guardianship of Breeahana C., supra* note 28, 14 Neb. App. at 185, 706 N.W.2d at 70.

- 40 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

that the appellee is usually not harmed.[31] Applying that reasoning from other courts in *In re Guardianship of Breeahana C.*, the Court of Appeals concluded that it had jurisdiction over the appeal in that case because the appellant's notice of appeal was timely forwarded to it and "none of the opposing parties claim[ed] that they have been prejudiced."[32]

We agree with the approach adopted by the Court of Appeals in *In re Guardianship of Breeahana C.* and find that we have jurisdiction over the present appeal under that approach. The only jurisdictional defect alleged in the present case is that the State stated an intention to appeal to the Court of Appeals, not this court. The State then moved to bypass the Court of Appeals, and we granted the State's motion. FOP 88 does not allege that it was prejudiced by the State's filing of the notice of appeal referring to the Court of Appeals. In fact, FOP 88 had objected to the State's petition to bypass the Court of Appeals on the ground that "an appeal from a [CIR] order regarding a unit clarification proceeding should advance like cases decided at the district court: to the Court of Appeals for further review."[33]

FOP 88 also argues that our decision in *Estate of Schluntz v. Lower Republican NRD*[34] recognized that "filing an appeal in the wrong court is a jurisdictional defect," which precludes an appellate court from exercising jurisdiction.[35] However, *Estate of Schluntz* involved the review of an agency action by a district court.[36] Where a district court has statutory authority to review such an action, the district court acquires

---

[31] *Id.*

[32] *Id.* at 186, 706 N.W.2d at 70.

[33] Brief for appellee in opposition to petition to bypass at 4.

[34] *Estate of Schluntz v. Lower Republican NRD*, 300 Neb. 582, 915 N.W.2d 427 (2018).

[35] Brief for appellee in support of motion to dismiss at 7.

[36] *Estate of Schluntz, supra* note 34.

- 41 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

jurisdiction only if the review is sought in the mode and manner and within the time provided by statute.[37]

## 2018 CERTIFICATION ORDER DOES
## NOT PRECLUDE STATE'S CLAIMS

Because we find it dispositive,[38] we next address the State's argument that the CIR erred in "rel[ying] on the 2018 [c]ertification [o]rder . . . in placing the [corrections unit case] [m]anagers in the PSBU."[39] As the State observes, in the proceedings before the CIR, neither party "address[ed] the 2018 [c]ertification [o]rder or any implications derived therefrom."[40] FOP 88's petition to amend or clarify the PSBU focused on § 48-801 of the Industrial Relations Act and § 81-1373 of the Bargaining Act. The State's answer had a similar focus. The CIR sua sponte raised the matter of the 2018 order. The State claims that the CIR erred in so doing.

[6] In light of CIR's statement that the issue of whether corrections unit case managers were part of the PSBU was before the CIR in 2018 and that the CIR specifically found they were included, we understand the CIR to have viewed the issue as precluded, a theory that FOP 88 adopts in its brief on appeal. Issue preclusion, also referred to as collateral estoppel, applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.[41]

---

[37] *Id*.

[38] Cf. *Swicord v. Police Stds. Adv. Council*, 314 Neb. 816, 993 N.W.2d 327 (2023) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case or controversy before it).

[39] Brief for appellant at 26.

[40] Reply brief for appellant at 7.

[41] *In re Estate of Helms*, 302 Neb. 357, 923 N.W.2d 423 (2019).

- 42 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

We have previously found that administrative decisions can have preclusive effect.[42] And we have opined that allowing a court to raise the issue of preclusion sua sponte is "fully consistent with the policy of avoiding unnecessary judicial waste."[43] However, we have also indicated that courts "infrequently" do so,[44] a statement that has been construed to "imply[] that sua sponte invocations should be the exception rather than the norm."[45] "One of the hurdles to raising [preclusion] sua sponte is that the record is likely to be insufficient to determine if preclusion applies."[46]

This is a case where the record was insufficient for the CIR to find preclusion sua sponte. The only evidence in the record regarding the 2018 proceeding is (1) FOP 88's petition to decertify NAPE Local 61 as the PSBU's bargaining representative, (2) the State's answer to that petition, and (3) the subsequent CIR order. The record of the 2018 proceeding is not included, and neither the parties nor the CIR indicated what evidence was considered at that time. We do observe,

---

[42] See, e.g., *Richardson v. Board of Education*, 206 Neb. 18, 290 N.W.2d 803 (1980) (local board of education bound by prior order of State Board of Education requiring it to pay tuition for out-of-state high school in subsequent proceeding to recover tuition paid). But see, *Pittsburgh Glass Co. v. Board*, 313 U.S. 146, 61 S. Ct. 908, 85 L. Ed. 1251 (1941) (suggesting that agency decision regarding composition of bargaining unit would not have been afforded preclusive effect in subsequent unfair labor practice proceeding if employer had indicated that its evidence was more than cumulative); *In re Appeal of University System of NH*, 147 N.H. 626, 795 A.2d 840 (2002) (similar).

[43] *Dakota Title v. World-Wide Steel Sys.*, 238 Neb. 519, 526, 471 N.W.2d 430, 435 (1991).

[44] *Id*. at 525, 471 N.W.2d at 434. See, also, *Martin v. Nebraska Dept. of Corr. Servs.*, 267 Neb. 33, 671 N.W.2d 613 (2003) (declining to raise claim preclusion, also known as res judicata, sua sponte); *Strom v. City of Oakland*, 255 Neb. 210, 583 N.W.2d 311 (1998) (declining to invoke issue preclusion and claim preclusion sua sponte).

[45] John P. Lenich, Nebraska Civil Procedure § 8:16 at 426 (2023).

[46] *Id*. at 426-27.

- 43 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

however, that while FOP 88's decertification petition alleged that the job classifications in the PSBU were occupationally and functionally related and had a community of interest with one another, it did not allege that corrections unit case managers were not supervisors under § 48-801(14). Given this circumstance, it seems unlikely that evidence regarding whether corrections unit case managers were supervisors was heard in the 2018 proceeding.

It also cannot be said that a preponderance of the competent evidence on the record considered as a whole supports the CIR's finding that the PSBU has included and will continue to include corrections unit case managers pursuant to its 2018 certification order. The CIR found that the State has been "quietly using two different classifications" of corrections unit case managers since before the 2018 proceedings and "unilateral[ly] differentiat[ed]" between the "P" and "V" job codes. However, although the CIR may not have learned of the State's view that at least some corrections unit case managers were supervisors until the present matter, it does not necessarily follow that the State's view was unknown to the union or that the State acted unilaterally.

There was testimony at the hearing in the present matter that when FOP 88 sought to decertify NAPE Local 61, FOP 88 was informed by the State's "[c]hief negotiator" that at "some point in time," the State took corrections unit case managers out of the PSBU and "put them into the supervisory unit," and that "NAPE never objected." The evidence at the hearing also showed that the labor contracts in effect for 2015-17 and 2017-19 provided for the exclusion of employees who "occup[ied] positions identified as supervisory . . . either as agreed upon by the [e]mployer and the [u]nion or as identified at any time by the [CIR] or court of proper jurisdiction." Insofar as NAPE Local 61 did not "object" to the State's identifying corrections unit case managers as supervisory, the union could be seen to have agreed with the State under the

- 44 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

plain meaning of the term "agree."[47] The CIR has previously addressed cases where after it first certified the bargaining unit, specific position titles were "taken out of the bargaining unit in subsequent negotiation sessions."[48]

Admittedly, the 2021-23 labor contract does provide that it "supersede[d] and cancel[ed] all prior practices and agreements, whether written or oral, unless expressly stated to the contrary herein." However, even if this language were construed to apply to any prior understanding between the State and NAPE Local 61 regarding the composition of the PSBU, the 2021-23 labor contract took effect on July 1, 2021. That was after the 2018 certification proceeding and after FOP 88 filed its petition in the present case.

The record in the present case is also inconsistent with the CIR's statements that there is "no reason to think [that] the [c]ertification [o]rder was referring to an empty and never-used position code" and that the State did not offer "any evidence to explain the alleged differences in duties and responsibilities" between the two corrections unit case manager positions that the State alleged existed. When listing the classifications that it sought to represent, FOP 88's petition to decertify NAPE Local 61 stated that "some of these classes may currently be vacant." A witness for the State testified similarly at the hearing in the present matter that all the employees whom the Department of Correctional Services could identify as having held the position of corrections unit case manager had a "V" job code. In other words, those employees were supervisors and, as such, not included in the PSBU. In addition, exhibit 516, which was offered by the State and admitted into evidence, showed corrections unit case manager positions with different duties. Specifically,

---

[47] See Black's Law Dictionary 84 (11th ed. 2019).

[48] See, e.g., *United Food and Commercial Workers District Local 22 v. County of Hall*, No. 1081, 2005 WL 6120819 at *1 (C.I.R. Mar. 24, 2005).

- 45 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
FRATERNAL ORDER OF POLICE LODGE #88 v. STATE
Cite as 316 Neb. 28

exhibit 516 showed that some corrections unit case manager positions supervised corrections unit caseworkers, while others did not.

Because the CIR erred in finding that the PSBU has included and will continue to include corrections unit case managers pursuant to its 2018 order, we reverse the CIR's order and remand this matter to the CIR to again rule on whether the PSBU includes corrections unit case managers based on the existing record and to provide an explanation which forms the basis for its ruling.[49] We are cognizant that generally we do not require a district court to explain its reasoning.[50] However, while the CIR summarily concluded that corrections unit case managers were not supervisors and impliedly found that they were occupationally and functionally related to and have a community of interest with other employees in the PSBU, the CIR did not make any findings of fact as to those matters. Instead, its findings of fact concerned the 2018 decertification proceeding and the State's subsequent refusal to bargain as to corrections unit case managers. Section 48-817 of the Industrial Relations Act requires the CIR to make all findings, findings of fact, recommended decisions and orders, and decisions and orders in writing.

## CONCLUSION

Because the CIR erred in giving preclusive effect to its 2018 order certifying FOP 88 as the bargaining representative for the PSBU, we reverse the CIR's order and remand

---

[49] Cf. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016) (taking same approach to decision by Workers' Compensation Court, another entity whose decisions appellate court may modify, reverse, or set aside only when (1) entity acted without or in excess of its powers; (2) judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in record to warrant making of order, judgment, or award; or (4) findings of fact by compensation court do not support order or award).

[50] *Brumbaugh v. Bendorf*, 306 Neb. 250, 945 N.W.2d 116 (2020).

the matter to the CIR to again rule on whether the PSBU includes corrections unit case managers based on the existing record and to provide an explanation that forms the basis for its ruling.

REVERSED AND REMANDED WITH DIRECTIONS.

HEAVICAN, C.J., participating on briefs.